# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

## PACER Cover Sheet
## for Electronically Filed Documents

Any data shown here are current as of 06/10/06 . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

**Case Title:** Daniel William Cook and Yolanda T. Cook

**Case Number:** 04-17704

### Document Information

**Description:** Memorandum Opinion re: [120-1] Motion For Turnover of Insurance Proceeds by Spica Properties, Inc. .

**Received on:** 2006-03-01 13:19:06.000

**Date Filed:** 2006-03-01 00:00:00.000

**Date Entered On Docket:** 2006-03-01 00:00:00.000

### Filer Information

**Submitted By:** James Burke

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
Daniel William Cook
and Yolanda T. Cook,
    Debtors.                                    No. 11 - 04-17704 - SA

**MEMORANDUM OPINION ON MOTION**
**TO RECOVER INSURANCE PROCEEDS**

This matter came before the Court on Spica Properties, Inc.'s ("Spica") Motion to Recover Insurance Proceeds (doc 120) and the Objection by Debtors thereto (doc 129). The parties submitted Memoranda in support of their respective positions (docs 211 and 212) and Requested Findings of Fact and Conclusions of Law (docs 293 and 295). Having considered the evidence at trial and the arguments of the parties, the Court finds that Spica's motion is well taken and should be granted. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (O).

**FACTS**

The facts are not generally disputed. Debtors owned real property and improvements[1] located at 5101 Eakes Road NW, Albuquerque, New Mexico on which Eastern Savings Bank, FSB ("Eastern") had a mortgage that secured a debt in the original amount of $900,000. Debtors defaulted under the mortgage and Eastern foreclosed, obtaining its foreclosure judgment on October 1, 2003. Eastern purchased the property at a December 11, 2003 foreclosure sale, bidding its entire debt for the property and

---

[1] Among other things, Mr. Cook is a general contractor and constructed the house himself in 1982-83 at a cost of $175,000.

thereby extinguishing Debtors' liability to Eastern. On December 22, 2003 the state court approved the sale by order. The Special Master's Deed conveying the property to Eastern was recorded on December 29, 2003. Eastern transferred the property to Spica by deed executed December 19, 2003 and recorded on January 5, 2004.

The state court granted a four-month right of redemption to the Debtors, ending April 22, 2003, provided they pay Eastern $10,703.40 for each month after a 30 day period of redemption. Debtors made payments pursuant to the redemption order and continued to live in the house. By agreement of the parties, the redemption period was extended several times, both orally and in writing. The redemption period was still in effect on the date Debtors filed their voluntary Chapter 11 petition on October 21, 2004. The right to redeem has since expired without being exercised. The Court finds that Debtors never had the financial ability to redeem, and that it would have been unreasonable for them to expect that they would be financially able to redeem. There are no allegations and there was no evidence that the foreclosure sale was not properly conducted under state law. No appeal was taken.

As a condition of the extended redemption period, Eastern required Debtors to insure the property. Debtors obtained insurance, listing themselves as insured and Eastern as an additional insured.

On October 5, 2004, the property was damaged by a hail storm. Debtors filed an insurance claim and received[2] $58,367.83 for damage to the roof and interior of the house. Debtors spent some money to repair the roof[3], $2,630.53 to repair/maintain the air conditioning system, $1,999.96 to repair/maintain the sprinkler system, $4,482 to renew the insurance policy for the period May 2005 to May 2006, approximately $21,000 for patent maintenance fees, some amounts for living expenses and car maintenance and for other purposes, and have approximately $13,000.00 remaining. Spica seeks a turnover of all insurance proceeds as the owner of the property.

There was no evidence presented that the Debtors lost the use of the property after the storm or that any of their personal property was damaged or destroyed. The Court has no admissible

---

[2]Debtors argue that because the insurance was received post-petition it is estate property free of any claims. The Court disagrees. Debtors' and Spica's respective interests in the funds were established on the date of the loss independent of when Debtors filed their case. Furthermore, Debtors did not own the property at the date of the loss, so any proceeds from the property's damages are not proceeds of estate property and may not even be property of the estate. What is estate property is the Debtors' interest in the insurance contract. Debtors also argue that because they paid for the policy, they should be entitled to keep the proceeds. This is not the law in New Mexico. See Berlier v. George, 94 N.M. 134, 135-36, 607 P.2d 1152, 1153-54 (1980)(Party who bears risk of loss is entitled to insurance proceeds regardless of who contracts for coverage.)

[3]Mr. Cook testified that he did not keep track of amounts spent on the roof, but that all charges could be found in his monthly operating reports. The Court has not reviewed the operating reports to determine the exact amounts expended.

Case 04-17704-nlj7    Doc 350    Filed 03/01/06    Entered 03/01/06 15:13:00 Page 4 of 12

evidence of the value of the land or improvements at the time of the foreclosure sale, at the time of the hail storm, at the time of the Chapter 11 filing, or any other time.  At trial, Mr. Cook attempted unsuccessfully to qualify himself as an expert on house values.  Mr. Cook did testify, however, as an estimator and he suggested the property's replacement cost was in the neighborhood of $1 million exclusive of land.  Replacement cost for a twenty year old house may give an indication of market value, but the Court had no evidence on this point.  Also in evidence is Spica's insurance policy on the property, which insures the dwelling for $750,000.  The subject insurance policy valued the property at $975,000.

**DISCUSSION**

In general, insurance law provides that a foreclosing mortgagee is entitled to all insurance proceeds after foreclosure if the mortgagor fails to redeem[4].

---

[4]In New Mexico, redemption is provided for by statute. Section 39-5-18 provides, in relevant part:

> A. After sale of any real estate pursuant to any such judgment or decree of any court, the real estate may be redeemed by the former defendant owner of the real estate, his heirs, personal representatives or assigns or by any junior mortgagee or other junior lienholder:
>
> (1) by paying to the purchaser, his personal representatives or assigns, at any time within nine months from the date of sale, the amount paid, with interest from the date of purchase at the rate of ten percent a year, together with all taxes, interest and
>
> (continued...)

Case 04-17704-nlj7    Doc 350    Filed 03/01/06    Entered 03/01/06 15:13:00 Page 5 of 12

Where the damage occurs <u>after</u> approval of the foreclosure sale and before expiration of the mortgagor's right to redeem, courts have allowed the purchasing mortgagee to recover <u>all</u> the insurance proceeds should the mortgagor fail to redeem within the time period. 5A J. Appleman, Insurance Law and Practice § 3403 (1970). The courts point out that the

---

[4](...continued)
penalties thereon, and all payments made to satisfy in whole or in part any prior lien or mortgage not foreclosed, paid by the purchaser, with interest on such taxes, interest, penalties and payments made on liens or mortgages at the rate of ten percent a year from the date of payment; or
(2) by petitioning the district court in which the judgment or decree of foreclosure was entered for a certificate of redemption and by making a deposit of the amount set forth in Paragraph (1) of this subsection in cash in the office of the clerk of the district court in which the order, judgment or decree under which the sale was made was entered, at any time within nine months from the date of sale.

B. Copies of the petition for redemption shall be served upon the purchaser of real estate under a foreclosure sale or his personal representatives or assigns.

C. Any purchaser of real estate under a foreclosure sale or his personal representatives or assigns, upon being served with the petition for redemption of the property, shall answer the petition within thirty days after service of the petition.

D. The hearing shall be governed by the rules of civil procedure. At the hearing, the judge shall determine the amount of money necessary for the redemption, which shall include the money paid at the sale and all taxes, interest, penalties and payments made in satisfaction of liens, mortgages and encumbrances. At the conclusion of the hearing, the district court may order the clerk of the court to issue the certificate of redemption upon such terms and conditions as it deems just.

Case 04-17704-nlj7    Doc 350    Filed 03/01/06    Entered 03/01/06 15:13:00    Page 6 of 12

> mortgagee's bid represented the property in an
> undamaged state. See, e.g., Nationwide Mutual Fire
> Insurance Co. v. Wilborn, [291 Ala. 193, 279 So.2d 460
> (1973)]; City of Chicago v. Maynur, 28 Ill.App.3d 751,
> 329 N.E.2d 312 (1975). The mortgagee is thus "entitled
> to what remains and to the money which stands in place
> of the lost portion of the property which he
> purchased." Malvaney v. Yager, 101 Mont. 331, 54 P.2d
> 135, 139 (1936).

Tech Land Development, Inc. v. South Carolina Ins. Co., 57 N.C.App. 566, 569-70, 291 S.E.2d 821, 824 (Ct.App. 1982)(emphasis in original). See also 12 Couch on Insurance § 178:57 (3rd Ed.)("Where damage occurs after approval of a foreclosure sale and before the expiration of the mortgagor's right to redeem, a purchasing mortgagee is entitled to recover all insurance proceeds should the mortgagor fail to redeem within the time period.") Therefore, because the property was damaged after foreclosure and the Debtors never redeemed, the insurance proceeds are properly payable to Spica to stand in the place of the damaged portion of the property it purchased.[5]

---

[5] Debtors argue that, through their efforts, they repaired the roof to a condition better than it had been before the storm. Thus, they claim that Spica will be unjustly enriched if it ends up with both a better roof and the insurance proceeds. The Court has two responses. First, a repaired roof is not a substitute for a new roof, which is for what the insurance company paid. And, there was no evidence at trial that any repairs or replacements were done in the interior of the house. Second, to the extent Debtors used their efforts to repair the roof, they were under no obligation to do so, so acted as mere volunteers for which they cannot now recover. See Brooks v. Leadinghouse, 29 N.M. 309, 222 P. 660 (1924)(Tenant with no obligation to repair roof acted as a mere volunteer with no right of recovery against the landlord.) See also Holland v. Harmston (Estate of
(continued...)

This result is also suggested by the New Mexico insurable interest statute and cases interpreting it, as well as by cases interpreting similar statutes elsewhere. Section 59A-18-6 NMSA 1978 provides:

> A. No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.
>
> B. "Insurable interest" as used in this section means any actual, lawful and substantial economic interest in the safety and preservation of the subject of the insurance free from loss, destruction, pecuniary damage or impairment.

The Court finds that the Debtors had no insurable interest in the property at the time of the loss. Alternatively, even if they did, that interest was de minimus and not established by the evidence.

A. <u>No insurable interest.</u>

The right of redemption is essentially an option to repurchase a foreclosed property for a particular price and for a particular time. Courts routinely hold that an unexercised option to purchase property does not create an insurable interest. See <u>Harris v. North Carolina Farm Bureau Mutual Ins. Co.</u>, 91 N.C.App. 147, 152, 370 S.E.2d 700, 703 (Ct.App. 1988)(An

---

⁵(...continued)
<u>De La Fuente)</u>, 93 N.M. 87, 88, 596 P.2d 856, 857 (1979)(A renter who acts as a volunteer in making improvements cannot recover against owner.)

unexercised option is a mere expectancy and does not qualify as an insurable interest.); Anderson v. State Farm Fire and Casualty Co., 397 N.W.2d 416, 418 (Minn. Ct.App. 1987)(Interest in acquiring property in the future does not give a present insurable interest.); Travelers Indemnity Co. v. Duffy's Little Tavern, Inc., 478 So.2d 1095, 1096 (Fla. App. 1985)(An unexercised option does not generate equitable or legal title to realty.); Erie-Haven, Inc. v. Tippmann Refrigeration Construction, 486 N.E.2d 646, 650 (Ind. App. 1985)(An unexercised option does not create a present interest in property.); Christ Gospel Temple v. Liberty Mutual Ins. Co., 273 Pa.Super. 302, 308, 417 A.2d 660, 663 (1979), cert. denied, 449 U.S. 955 (1980)(The "mere possibility" that an option might be exercised does not amount to an insurable interest.); Hane v. Hallock Farmers Mutual Ins. Co., 258 N.W.2d 779, 782 (Minn. 1977)(If one holds only an option to purchase property but no obligation to purchase it there is no loss upon the property's destruction and no insurable interest.) The Court finds these cases persuasive. See also Gossett v. Farmers Ins. Co. of Washington, 133 Wash.2d 954, 967, 948 P.2d 1264, 1271 (1997)(An assignment of all interest in property which extinguishes the debt on the property generally eliminates any insurable interest in the property.) The Debtors had no insurable interest in the property; they held no legal or equitable title at the time of the loss, or at any time

thereafter. The Debtors suffered no losses in the hail storm, Spica did.

B. <u>Interest was de minimus and not established.</u>

Even if the Debtors had an insurable interest in the property, that interest was de minimus and not established by the evidence. "The conclusion that the insured has an insurable interest in the destroyed property does not end the inquiry. It is also necessary to measure that insurable interest, to determine its extent. ... The insurable interest ordinarily should not exceed the potential loss to the insured." <u>Teague-Strebeck Motors, Inc. v. Chrysler Ins. Co.</u>, 127 N.M. 603, 615-16, 985 P.2d 1183, 1195-96 (Ct. App. 1999).

One rule in New Mexico is that an insured with a limited interest in property can recover only to the extent of the limited interest. <u>Id.</u> at 616, 985 P.2d at 1196. The Debtors held no legal or equitable title to the property; their interest was the value of the use of the property on a month to month basis, plus their personal property, plus perhaps any improvements they had made to the property. <u>See</u> <u>Duffy's Little Tavern</u>, 478 So.2d at 1096. There was no evidence presented that Debtors lost the use of the property, that any of their personal property was damaged, or that they had made improvements to the property at their own expense after foreclosure. <u>Compare</u> <u>Anderson</u>, 397 N.W.2d at 419 (Insured failed to prove value of

Page -9-

Case 04-17704-nlj7    Doc 350    Filed 03/01/06    Entered 03/01/06 15:13:00 Page 10 of 12

loss of use of his limited right of occupancy.)  Simply put, the
Debtors did not establish that they stood to lose anything from
the hail damage.  An insurable interest is limited to the amount
of potential loss.  Teague-Strebeck Motors, 127 N.M. at 616, 985
P.2d at 1196.  See also City of Carlsbad v. Northwestern Nat'l
Ins. Co of Milwaukee, Wisconsin, 81 N.M. 56, 59, 463 P.2d 32, 35
(1970)(An insured is limited in recovery to the value of the
actual interest lost.)  The Court finds that the extent of the
insurable interest was de minimus or nonexistent.  If the Debtors
retained the insurance proceeds, they would receive a windfall.

Other issue

   The Debtors are entitled to a credit, however, for the
amount they paid for the policy.  See  Teague-Strebeck Motors,
127 N.M. at 616, 985 P.2d at 1196 (citing Berlier v. George, 94
N.M. 134, 135-36, 607 P.2d 1152, 1153-54 (1980)).  Similarly, the
Court finds that Debtors should receive a credit for all funds
actually expended on the property, including the costs of roof
repairs and amounts spent on the air conditioning system and
sprinklers.

   The Court will enter an Order in conformity with this
Memorandum Opinion directing Debtors to provide an accounting to
Spica to facilitate entry of a specific order directing turnover
of the insurance proceeds.

_[signature]_
Honorable James S. Starzynski
United States Bankruptcy Judge

I hereby certify that on March 1, 2006, a true and correct copy of the foregoing was electronically transmitted, faxed, delivered, or mailed to the listed counsel and/or parties.

William R Keleher
PO Box 2168
Albuquerque, NM 87103-2168

Daniel William Cook
920 Galeras Street NW
Albuquerque, NM 87120

Yolanda T. Cook
920 Galeras Street NW
Albuquerque, NM 87120

_James E. Burke_