UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re DANIEL WILLIAM COOK
and YOLANDA TERESA COOK,
                    Debtors.                    No. 7-04-17704-SA

## MEMORANDUM OPINION

This Memorandum Opinion is entered in connection with
various motions currently pending in this bankruptcy case.
Debtors filed this case as a voluntary Chapter 11 proceeding on
October 21, 2004.  On December 7, 2004, Debtors filed Adversary
Proceeding 04-1240-S, Cook, et al. v. Garrett Capital, et al.
Wells Fargo Bank, NA (one of the defendants) promptly filed a
Motion to Abstain (Adv doc 15).  After briefings and hearings,
the Court[1] entered Proposed Findings of Fact and Conclusions of
Law on October 19, 2005, recommending to the United States
District Court that it enter an order granting the motion, i.e.,
ordering abstention.  The matter was then put on the United
States District Court's docket as No. MC05-0042-JB.  Adv doc 114.
On March 19, 2009, the Hon. James Browning, District Judge,
entered an Order granting the motion and ordering this Court to
abstain from exercising jurisdiction over the adversary
proceeding.[2]  The March 19, 2009 Order disposed of the adversary

---

[1] References in this memorandum opinion to "the Court" and
"this Court" are to the Bankruptcy Court.  The District Court is
will always be identified specifically as such.

[2] From the various motions that Mr. Cook (sometimes "Debtor"
herein) later filed in the District Court case it is obvious that
(continued...)

proceeding, in effect dismissing it; no further action on the matter was required and, as with any dismissal, the District Court case should have been closed but was not.

For unknown reasons, the March 19, 2009 District Court Order was not transmitted to this Court until March 30, 2010. Adv doc 123. Perhaps as a consequence, between July 17, 2009 and October 29, 2009, before this Court was notified of the District Court's Order, the parties filed more motions, responses, and replies in the still open District Court case. None of those filings had anything to do with the subject matter of the closed District Court case. Rather, they were motions dealing with procedural matters that should have been brought up in the underlying bankruptcy case still pending in this Court, e.g., claims for stay violations and motions for sanctions. The parties also filed "notices" of the District Court filings in the Bankruptcy Court. No party brought to the attention of the Bankruptcy Court

---

[2](...continued)
Mr. Cook did not understand what this order meant. It is clear that Mr. Cook believed that the order divested the Bankruptcy Court's jurisdiction over the adversary proceeding and vested it exclusively in the United States District Court and divested the state court's jurisdiction. This is incorrect. When the federal court abstains, it releases all federal jurisdiction, leaving jurisdiction to (re)vest exclusively in the state court. See, e.g., Personette v. Kennedy (In re Midgard Corp.), 204 B.R. 764, 778-79 (10th Cir. BAP 1997) (Containing long discussion of the meaning of "can be timely adjudicated in a State forum of appropriate jurisdiction", which is an element of abstention. If the federal court were retaining jurisdiction, this element would be an absurdity.)

-2-

any of the District Court filings (other than filing the "notices"), and no party asked for a hearing in Bankruptcy Court on any of the issues presented.  On December 1, 2009, the District Court conducted a hearing on the motions.  On December 3, 2009, the District Court entered an Order stating that the automatic reference of bankruptcy cases to the bankruptcy court was still in effect with respect to the underlying bankruptcy case, and referred the motions back to the bankruptcy court.  Adv doc 116.[3]  This Court conducted a status conference on January 19, 2010 and took all the remaining issues under advisement.  It now decides those matters.[4]

All of the filings in the District Court can be grouped into two procedural issues and four substantive matters.  The Court will address the procedural issues first, then turn to the substantive matters.

First, Wells Fargo filed a response to Debtor's Amended "Transfer of Interest ..." in the District Court on August 10, 2009.  Doc 849.  Debtor responded with a "Motion to Dismiss Alternatively Strike ..."  Doc 851.  In this motion, Debtor asks

---

[3] Referring the six motions back to this Court and having decided not to withdraw the reference, the District Court "consider[ed] this miscellaneous filing in the District Court closed."  Adv doc 116, at 3.

[4] The Court's law clerk has revised several Bankruptcy Court CM docket entries to change each Bankruptcy Court "notice" of a District Court filing to identify and describe the specific filing at issue.

-3-

the Court to 1) strike Wells Fargo's response, 2) enter an order voiding the state court judgment (discussed below), 3) enter an order imposing fees and costs for violations of the automatic stay and awarding sanctions and special damages.  The grounds for Debtor's motion are: 1) Wells Fargo's response is seven pages too long per D.N.M. LR-Civ 7.5, 2) Wells Fargo's response's exhibits are sixty-six pages too long per D.N.M. LR-Civ 10.5, and 3) Wells Fargo's response was untimely per D.N.M. LR-Civ 7.4(a).  Wells Fargo objected to this motion.  Doc 857.  Debtor replied.  Doc 859.

The Motion to Dismiss Alternatively Strike is meritless and must be denied outright.  In New Mexico, the New Mexico Local Bankruptcy Rules apply to all stages of bankruptcy matters except appeals.  The Federal District Court rules do not apply to bankruptcy matters.  See NM LBR 1001-1 (2010)[5], which provides in relevant part as follows:

> **RULE 1001-1 SCOPE, APPLICATION, WAIVER OF RULES, AND CONSTRUCTION**
> (a) Citation. These rules shall be cited as "NM LBR-."
> (b) Scope. Pursuant to the Administrative Order of the United States District Court, Misc. No. 84-0324, dated March 19, 1992, and D.N.M.LR-Civ. 1.6, these rules govern procedure in all bankruptcy cases and

---

[5] The New Mexico Bankruptcy Local Rules were amended effective August 2, 2010, after the filings in this matter.  The earlier (1996) version of this rule was substantially the same:
**RULE 1001-1 SCOPE OF RULES.**
These local rules govern procedure in bankruptcy cases and proceedings, whether heard by a bankruptcy judge or district judge.

-4-

proceedings in the United States District and
Bankruptcy Courts of the District of New Mexico, except
appeals.
(c) Application: These rules govern all cases and
adversary proceedings pending or filed on or after the
effective date, unless the court orders otherwise.
...

The New Mexico Bankruptcy Local Rules do not contain page
limitations. Furthermore, Wells Fargo response regarding
timeliness of its response is correct. However, even if Wells
had filed a response four days late (which it did not), the Court
cannot conceive how this prejudiced Debtor. This is particularly
true in light of the fact that the correct court was not even in
the loop until months later. The Court will enter an Order
denying Debtor's Motion to Dismiss Alternatively Strike.

The second procedural matter raised by the papers is
Garrett's Motion to File a Surreply. Doc 862. As discussed in
detail below, the Motion for Sanctions for Violation of the
Automatic Stay addressed to the Garrett parties (doc 846) is so
devoid of any merits that the Court does not need the benefit of
a surreply. Therefore, the Court will enter an Order denying the
motion to file a surreply as moot.

Turning now to the substantive issues, the Court breaks down
the papers into four matters as follows:

**MATTER 1.**

| | |
|---|---|
| [Transfer of interest substitution, entry of appearance and Motion for Sanctions and Damages against Wells Fargo Bank, N.A. for Willful Violations of the Automatic Stay] (doc 845) [Amended by doc 847, so Court will not consider doc 845.] | |
| Debtor's Amended "Transfer of interest substitution, entry of appearance and Motion for Sanctions and Damages against Wells Fargo Bank, N.A. for Willful Violations of the Automatic Stay" and "Notice" (doc 847) | |
| | [Wells Fargo filed a response which Debtor moved to strike. Wells Fargo filed an amended response and the Court will not consider the original Wells Fargo response.] |
| | Wells Fargo's Amended Response in Opposition to Debtor's Amended "Transfer of Interest ... " (doc 853) |
| | Debtor's Reply to "Wells Fargo's Amended Response in Opposition to Debtor's Amended ... " (doc 855) |
| **MATTER 2.** | |
| Transfer of Interest Substitution and Motion for Sanctions and Damages against Scott Garrett, Pamela Garrett and the Garrett Trust for Willful Violations of the Automatic Stay (doc 846) | |
| | Response to Debtor's Motion for Sanctions (doc 852) |
| | Garrett's Notice of Errata (attaching two exhibits omitted from Response) (filed only in District Court as doc 25) |
| | Debtor's Reply to Scott Garrett and Garrett Capital's "Response to Debtor's Motion for Sanctions") (doc 854) |
| | Re-submittal of Doc [854] (as corrected): Debtor's Reply to Scott Garrett and Garrett Capital's "Response to ..." (doc 856) |
| **MATTER 3.** | |
| Wells Fargo's Verified Application for Preliminary and Permanent Injunction (doc 864) | |
| | Memorandum in Support of Wells Fargo's Verified Application for Preliminary and Permanent Injunction (doc 865) |

–6–

| | Debtor's Opposition Response to Wells Fargo's Verified Application for Preliminary and Permanent Injunction and memorandum in Support (doc 867) |
|---|---|
| | Wells Fargo Bank's Reply in Support of its Application for Injunction (doc 869) |
| **MATTER 4.** | |
| Debtor's Motion for Additional Sanctions, This Time Under Rule 11 (doc 866) | |
| | Response in Opposition to Debtor's Motion for Additional Sanctions, This Time Under Rule 11 (doc 868) |
| | Debtor's Reply to "Response in Opposition to Debtor's Motion for Additional Sanctions ... " (doc 871) |

## DISCUSSION

### 1. Debtor Lacks Standing to Bring the Stay Motions.

Debtor's sanctions motions against Wells Fargo (doc 847) and the Garretts (doc 846) are both premised on his assumption that Trustee Montoya's "Notice of Abandonment", doc 844, granted standing to Debtor to pursue stay violations allegedly perpetrated against the estate. A brief summary of the some of the procedural history of this case is necessary.

On June 2, 2008, the chapter 7 trustee filed a Report of No Distribution ("NDR"), see docket entry immediately following doc 755, then filed a Withdrawal of [the NDR] Document. Doc 767 (July 30, 2008). Hydroscope Group, Inc.; Hydroscope Inc., USA; Hydroscope Canada Inc.; and CBM Group, Inc. filed on objection to the withdrawal and sought a declaration that the property had

-7-

been effectively abandoned.  This Court entered a Memorandum

Opinion on Abandonment, doc 838 (April 15, 2009), overruling the

objection and holding that unless Section 554 is strictly

complied with, there is no effective abandonment.

On September 4, 2008, Debtor moved to compel abandonment of

certain assets, doc 786, and noticed that motion out.  Doc 792.

The notice recited that any objections would come before the

Court for a preliminary hearing on October 2, 2008.  Id.

Objections to the motion to compel abandonment were filed by

Wells Fargo Bank (doc 812), the Garretts (doc 814) and the

trustee (doc 816).  However, there is no mention of the motion in

the minutes of the October 2 hearing (doc 818), and in any event

it appears that no one took any further action on the motion.

Then, on July 1, 2009, the Trustee filed the Notice of

Abandonment.  Doc 844.  Immediately after that entry, on the same

date, is a CM docket text entry containing the standard

abandonment language issued by trustees after a §341 meeting when

the trustee has determined the case to be a no-asset case.[6]

---

[6] No underlying document accompanies such a docket entry.
The language of the docket entry is as follows:
 Chapter 7 Trustee's Report of No Distribution: I,
 Philip J. Montoya, having been appointed trustee of the
 estate of the above-named debtor(s), report that I have
 neither received any property nor paid any money on
 account of this estate; that I have made a diligent
 inquiry into the financial affairs of the debtor(s) and
 the location of the property belonging to the estate;
 and that there is no property available for

(continued...)

-8-

There is no indication that the Trustee filed the notice in response to Debtor's motion to compel abandonment of assets (doc 786). And he did not send notice of the proposed abandonment to anyone, nor did he fix a deadline for objections pursuant to F.R.B.P. 6007.[7] Thus, there are no orders abandoning property.

---

[6](...continued)
distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 16 months. Assets Abandoned: $ 487085961.00, Assets Exempt: Not Available, Claims Scheduled: $ 9989980.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment: $ 9989980.00. Filed by Trustee Philip J. Montoya. (Montoya, Philip) (Entered: 07/01/2009 at 10:18:21)

[7] F.R.B.P. provides as follows:
**Abandonment or Disposition of Property**
(a) Notice of proposed abandonment or disposition; objections; hearing

Unless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees, and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code. A party in interest may file and serve an objection within 14 days of the mailing of the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to other entities as the court may direct.

(b) Motion by party in interest

A party in interest may file and serve a motion
(continued...)

And, the case has not yet closed.  See Section 554(c) ("Unless
the court orders otherwise, any property scheduled under section
521(a)(1) of this title not otherwise administered at the time of
the closing of a case is abandoned to the debtor and administered
for purposes of section 350 of this title.")  Nothing has yet
been abandoned.

Even if the case had closed, Debtor would still have a
standing problem.  Section 554(c) specifies that only "scheduled"
property is subject to the automatic abandonment provision.  A
cause of action for a stay violation is not "scheduled" property.
Therefore, even at closing Debtor does not obtain this cause of
action[8].  See Section 554(d) ("Unless the court orders otherwise,

---

[7](...continued)
requiring the trustee or debtor in possession to
abandon property of the estate.

[8] This is in accord with the general common law of trusts
and trustees.  See Bogert, Bogert and Hess, The Law of Trusts and
Trustees § 954:

Causes of action which arise out of ordinary acts
of trust administration or out of wrongdoing toward the
trust property are usually vested in the trustee alone.
The trustee has title and possession and the powers of
administration.  He is in substance the "owner" of the
trust property, as far as third persons are concerned.
Thus if a stranger to the trust appropriates trust
funds to his own use, or trespasses upon trust realty
or assumes adverse possession of it, or negligently or
intentionally damages trust property, or breaks a
contract made with the trustee, a cause of action
arises in favor of the trustee and the running of the
Statute of Limitations is controlled by the status of
the trustee as to notice of the wrong and as to
disabilities. ...

(continued...)

-10-

property of the estate that is not abandoned under this section
and that is not administered in the case remains property of the
estate.")  Under the clear language of Section 554, any causes of
action for violation of the automatic stay are estate property
and will remain so even when the case is closed.  See Delrey
Windows, Inc. v. Mars Builders, Inc. (In re Mars Builders, Inc.),
397 B.R. 255, 257 (Bankr. W.D. Pa. 2008)("[A] debtor in
possession ... and thus, a bankruptcy trustee as well, cannot
abandon a legal claim [for a fraudulent transfer] merely by
failing to prosecute it, whatever its reasons may be for not
doing so.")(citing In re General Development Corp., 179 B.R. 335,
340 (S.D. Fla. 1995)).  The Delrey Windows court also stated that
it would be "particularly unpalatable" if the proceeds of an
action that belonged to the estate did not redound to the entire
creditor body.  Id. at 258.  Similarly, Debtor is seeking

---

[8](...continued)
        Ordinarily the beneficiary has no cause of action
    against such a wrongdoer, and the question of notice of
    the wrong to him, or of his competency, is immaterial.
(Footnotes omitted.)  See also Restatement (Second) of Trusts §
281 (1959):
    (1) Where the trustee could maintain an action at law
    or suit in equity or other proceeding against a third
    person if the trustee held the trust property free of
    trust, the beneficiary cannot maintain an action at law
    against the third person, except as stated in
    Subsection (2).
    (2) If the beneficiary is in possession of the subject
    matter of the trust, he can maintain such actions
    against the third person as a person in possession is
    entitled to maintain.

-11-

millions of dollars from Wells Fargo and the Garretts in damages and punitive damages that properly would belong to the (other) creditors, who have received nothing in this case.

Based on this alone, Debtor does not have cognizable actions for sanctions for violations of the automatic stay. In fact, by pursuing these motions for sanctions it is Mr. Cook that is violating the stay by exercising control over assets of the bankruptcy estate. Both stay motions, Matters 1 and 2, should be denied for lack of standing.

## 2. **This Court Has Already, Repeatedly, Denied the Stay Motions.**

This Court entered numerous memorandum opinions and orders terminating and annulling the automatic stay, and orders confirming and clarifying the intent of those orders that all parties were free to pursue anything against anyone in the state court case, and validating all actions previously taken in the state court case. E.g., Doc 642, Order Resulting from Preliminary Hearing on Debtors' Motion for Sanctions and Damages for Willful Violation of the Automatic Stay ... , January 23, 2008 (Ruling that the actions complained of "do not violate the automatic stay."); doc 740, Order Granting Stay Relief (docs 679 and 712) ... , April 21, 2008 (Ordering that "[t]he automatic stay is both annulled, with respect to any proceedings that have taken place before the State District Court, and modified, with respect to any property in which either the estate or the Debtors

-12-

claim an interest, such that any party is entitled to seek, or to continue to seek, whatever state law or other remedies it wishes with respect to the property, including but not limited to adjudications of liability, lien rights and amounts owed.") This latter order did reserve the issue of whether there had been previous stay violations, as the parties were in the midst of briefing the issues. However, the Court later entered a September 15, 2008 Memorandum Opinion finding no violations of the automatic stay, and that the parties filing the three motions involved had no standing to pursue stay violations. Doc 798. (Memorandum Opinion on [three] Motions for Sanctions for Violation of the Automatic Stay).

In preparing this Memorandum Opinion, the Court refreshed its memory on Wells Fargo's state court summary judgment motion, which is the primary focus of the motions. This motion appears as Exhibit 1 to Debtor's Amended Transfer of Interest ... , doc 847. Footnote 1 on page 2 of Well Fargo's summary judgment motion states:

> Because of the Bankruptcy Code's automatic stay, Wells Fargo does not seek relief against Cooks on their guarantees or assets securing Hydroscope Group, Inc.'s debt which Cooks claim to be assets of their bankruptcy estate. In the event the stay is lifted, the summary judgment motion will be expanded to include claims against Cooks and assets of their bankruptcy estate.

The motion seeks judgment as follows:

    A.    Against Hydroscope Group, Inc.
    B.    Against Hydroscope Canada, Inc.

-13-

```
C.    Against Hydroscope Inc., USA
D.    Against CBM Group, Inc.
F.⁹   Dismissal of all claims in Garrett's Third Amended
      Complaint
G.    Dismissal of all claims in the Complaint for Damages
      filed by Daniel William Cook, Yolanda Cook, Hydroscope
      Integrated Technologies, Inc. and Hydroscope Inc., USA.
```

"'It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.' <u>Teachers Ins. & Annuity Ass'n v. Butler, et al.</u>, 803 F.2d 61 (2d Cir. 1986) (declining to extend stay of action against debtor partnership to its co-defendants, non-debtor individual partners)." <u>Gray v. Hirsch</u>, 230 B.R. 239, 242 (Bankr. S.D. N.Y. 1999). Therefore, the summary judgment motion does not violate the automatic stay in requests A, B, C, D, and F because they are directed at non-debtors. And, furthermore

> Although the scope of the automatic stay is broad, the clear language of section 362(a) indicates that it stays only proceedings against a "debtor"-the term used by the statute itself. <u>[Assoc. of] St. Croix [Condominium Owners v. St. Croix Hotel Corp.]</u>, 682 F.2d [446,] 448 [(3d Cir.1982)]. "The statute does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate." <u>Id.</u> <u>See also</u> <u>In re Berry Estates</u>, 812 F.2d 67, 71 (2d Cir.), <u>cert. denied</u>, 484 U.S. 819, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987); <u>Martin-Trigona [v. Champion Fed. Sav. & Loan Assoc.]</u>, 892 F.2d [575,] 577 [(7th Cir.1989)].

<u>Maritime Elec. Co. v. United Jersey Bank</u>, 959 F.2d 1194, 1204 (3ʳᵈ Cir. 1991). Therefore, request G of the summary judgment motion does not violate the automatic stay because the request is

---

⁹ Sic; "F" and "G" should be "E" and "F".

directed at a claim brought by the Debtors.  See also Bryner v. LeBaron (In re Bryner), 425 B.R. 601, 608 (10th Cir. BAP 2010)(Affirming bankruptcy court's ruling that, as a matter of law, defending one's rights in a state court action brought by a debtor is not a violation of the automatic stay.)  Therefore, the Court again finds that there were no stay violations and the motions, Matters 1 and 2, should be denied.

The Court also finds that Matters 1 and 2 should be denied as attempts to reargue issues previously decided against the Debtor.  The prior orders of this Court annulled the automatic stay, terminated the stay, and then later found that there had been no stay violations before the termination.  That covers all possible situations.  There were no violations of the stay. These two Matters wasted the time of both the parties and the Courts.

**3.**   **Debtor Is Barred by the Rooker/Feldman Doctrine and Collateral Estoppel from Bringing These Stay Motions.**

The state court's Summary Judgment Order is attached as Exhibit 8 to Debtor's Amended Transfer of Interest ... , doc 847. The title of the Order states only that it grants summary judgment against the Corporations.  It finds specifically:

> As to the Cooks, who assert the right to submit
> additional briefing, the Court finds:
> 1.   Wells Fargo did not sue the Cooks.
> 2.   Wells Fargo's summary judgment motion did not seek
> a recovery against the Cooks or the Cook bankruptcy
> estate, or any assets owned by the Cooks or the Cook
> bankruptcy estate, but rather limited its requested

-15-

relief to the entry of judgments against the Hydroscope
entities for the debt owed and the entry of foreclosure
relief against particular collateral owned by CBM
Group, Inc. or the Hydroscope companies. The Bank's
summary judgment motion sought to dismiss the Cook's
claims <u>against the Bank</u>, as to which the Bank (and not
the Cooks) would have defenses. The Cooks filed no
opposition whatsoever to the Bank's motion seeking to
dismiss the Cooks' claims. If, as Cooks contend, their
defenses to dismissal of their claims belonged to Cooks
and not to their bankruptcy trustee, the Cooks should
have opposed the motion, but did not. Their bankruptcy
trustee, who did own the Cooks' claims, did not oppose
their dismissal.

(Emphasis in original.)

Under New Mexico law a final judgment is defined as:

"'The general rule recognized by the courts of the
United States and by the courts of most, if not all, of
the states, is that no judgment or decree will be
regarded as final, within the meaning of the statutes
in reference to appeals, unless all the issues of law
and of fact necessary to be determined were determined,
and the case completely disposed of, so far as the
court had power to dispose of it."'

<u>Floyd v. Towndrow</u>, 48 N.M. 444, 152 P.2d 391, 392 (1944)(quoting

<u>Attorney General of Utah v. Pomeroy</u>, 93 Utah 426, 73 P.2d 1277,

1287 (1937)). The summary judgment is a final order of the state

district court.

When a state court loser attempts to attack or relitigate

the state court decision in federal court, the <u>Rooker-Feldman</u>

doctrine applies. The Court of Appeals for the Tenth Circuit

discussed the <u>Rooker-Feldman</u> doctrine in <u>Kiowa Indian Tribe of

Oklahoma v. Hoover</u>, 150 F.3d 1163, 1169 (10th Cir. 1998):

The threshold question is whether consideration of the
Tribe's § 1983 action is barred by the <u>Rooker-Feldman</u>

-16-

doctrine.  See Rooker v. Fidelity Trust Co., 263 U.S.
413, 414-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923);
District of Columbia Court of Appeals v. Feldman, 460
U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).
The Rooker-Feldman doctrine bars "a party losing in
state court ... from seeking what in substance would be
appellate review of the state judgment in a United
States district court, based on the losing party's
claim that the state judgment itself violates the
loser's federal rights." Johnson v. De Grandy, 512
U.S. 997, 1005-06, 114 S.Ct. 2647, 129 L.Ed.2d 775
(1994).  As a rule, federal review of state court
judgments can be obtained only in the United States
Supreme Court.  Feldman, 460 U.S. at 476, 103 S.Ct.
1303 (citing 28 U.S.C. § 1257; Atlantic Coast Line R.R.
Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281,
296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)); see also
Rooker, 263 U.S. at 415-16, 44 S.Ct. 149.  Generally, a
federal district court cannot review matters actually
decided by a state court, Rooker, 263 U.S. at 415, 44
S.Ct. 149, nor can it issue "any declaratory relief
that is 'inextricably intertwined' with the state court
judgment," Facio v. Jones, 929 F.2d 541, 543 (10th Cir.
1991)(quoting Feldman, 460 U.S. at 483-84 n. 16, 103
S.Ct. 1303 (extending doctrine to issues not actually
decided by the state court)).

The Rooker-Feldman doctrine applies in bankruptcy court.  Fifth

Third Bank of Western Ohio v. Singleton (In re Singleton), 230

B.R. 533, 537-38 (6th Cir. B.A.P. 1999)(Citing cases.)

     Under the Rooker-Feldman doctrine, a federal court cannot

overturn state court factual findings.  Hill v. Putvin (In re

Putvin), 332 B.R. 619, 624 (10th Cir. BAP 2005).  Such attacks on

state court factual findings may only be raised on appeal in the

state court or to the United States Supreme Court.  Id. (citing

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280,

292 (2005)).  Rooker-Feldman also bars claims that a party was

denied procedural due process in the state court.  Postma v.

-17-

First Federal Savings & Loan of Sioux City, 74 F.3d 160, 162 (8th
Cir. 1996).  When a state-court loser complains of injuries
caused by state court judgments and then asks the federal court
to review and reject those judgments all the federal court can do
is apply the state's preclusion law. Putvin, 332 B.R. at 624-25
(citing Exxon 544 U.S. at 293:

> Disposition of the federal action, once the state-court
> adjudication is complete, would be governed by
> preclusion law.  The Full Faith and Credit Act, 28
> U.S.C. § 1738, originally enacted in 1790, ch. 11, 1
> Stat. 122, requires the federal court to give the same
> preclusive effect to a state-court judgment as another
> court of that State would give.

(further citation and internal punctuation omitted.))  Therefore,
the only thing this Court can do for Debtor is determine how New
Mexico courts would treat the state court's judgment.

In New Mexico, collateral estoppel bars relitigation of
ultimate facts or issues actually and necessarily decided in
previous litigation.  Rosette, Inc. v. United States, 142 N.M.
717, 729, 169 P.3d 704, 716, 2007-NMCA-136 at {39} (Ct.App. 2007)
(citing Reeves v. Wimberly, 107 N.M. 231, 233, 755 P.2d 75, 77
(Ct.App. 1988)).  "[F]ederal and New Mexico law on claim
preclusion are similar."  Id. at 726, 169 P.3d at 713, 2007-NMCA-
136 at {31}.

> The four elements of collateral estoppel are
> (1) the issue previously decided is identical with the
> one presented in the action in question, (2) the prior
> action has been finally adjudicated on the merits, (3)
> the party against whom the doctrine is invoked was a
> party, or in privity with a party, to the prior

-18-

adjudication, and (4) the party against whom the
doctrine is raised had a full and fair opportunity to
litigate the issue in the prior action.

Id. at 717, 169 P.3d at 716, 2007-NMCA-136 at {39} (quoting Dodge
v. Cotter Corp., 203 F.3d 1190, 1198 (10th Cir. 2000)). The
Court finds that the four elements are established in this case.

First, one issue decided by the state court was foreclosure
of property interests. The state court necessarily examined the
evidence of liability of the co-defendant corporations, the
existence of liens against property of those corporations,
default, and the remedy of foreclosure. In doing so, it
specifically found that none of the property belonged to either
the Debtor or Debtor's bankruptcy estate. It then entered
foreclosure judgments against the property of those corporate
defendants.

The other issue decided by the state court was that the
claims asserted by Debtor were invalid. It then dismissed
Debtor's claims against other parties.

The issue in the motions before this Court is whether there
were violations of the automatic stay. For there to be a
violation of the automatic stay, there must be an action taken
against the Debtor, Debtor's property, or the bankruptcy estate's
property. That there were no actions taken against Debtor,

-19-

Debtor's property or the estate's property are the exact factual findings made by the state court. The issues in both the state court and this Court were the same.

Second, the state court summary judgment order was a final adjudication on the merits. Third, Mr. Cook is a party in both the state court case and this bankruptcy. Fourth, he had a full and fair opportunity to litigate the issue in the state court case. In fact, he was an active party before the bankruptcy. After he filed his bankruptcy petition, he initiated the adversary proceeding referred to above which basically duplicated the state court case (hence the abstention), and he appeared and participated in the state case after the federal courts abstained.

Therefore, collateral estoppel applies to the motions for sanctions for violations of the automatic stay. The state court's factual findings may not be upset. There was no stay violation. Matters 1 and 2 must be denied.

**4.    Wells Fargo's Application for Injunctive Relief must be Denied.**

The Federal Rules of Bankruptcy Procedure require an adversary proceeding to award injunctive relief (unless provided for in a confirmed plan.) See Fed.R.Bankr.P. 7001. Wells Fargo did not file an adversary proceeding. Therefore, the application will be denied without prejudice. If Wells Fargo wishes to pursue this relief, it should refile the application with the

-20-

required filing fee.  The Court observes, however, that this Memorandum Opinion and the associated orders that will enter as a result thereof will likely end the bankruptcy case.

**5.  Debtor's Motion for Additional Sanctions, "This Time under Rule 11" must be Denied.**

A substantial part of this motion is yet another history of every transaction between Debtor and Wells Fargo, and a rehash of arguments made in previous motions.  That portion of the motion need not be addressed again.  As new material, Debtor complains that Wells Fargo filed a motion in state court to restrict his access to making pro se filings in the state court and that the effect of this filing is to threaten his rights to offer testimony in this bankruptcy case.  Doc 866, p. 4-5.  Also, as addressed above, Wells Fargo attempted to restrict Debtor's access to this Court for more frivolous filings.  Wells Fargo was entirely within its rights to do so.  See, e.g., Tripati v. Beaman, 878 F.2d 351, 352 (10th Cir. 1989)(Per Curiam.) ("There is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances.")(Listing cases.)  "[I]njunctions are proper where the litigant's abusive and lengthy history is properly set forth." Id. at 353.  (Listing cases.)  It can hardly be a violation of Rule 11 to ask for relief that one may be entitled to, especially when accompanied by a logical argument, supported

by case law, and arguably grantable on its face simply from a review of the relevant dockets. As Wells Fargo has repeatedly pointed out in this case, if anyone disagrees with Debtor he seeks sanctions, moves to strike, or claims the other party is lying, cheating or stealing. The Court has come to the same conclusion. The Motion for Sanctions under Rule 11 will be denied.

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: April 6, 2011

Copies to:

Daniel William Cook
920 Galeras Street NW
Albuquerque, NM 87120

Chris W Pierce
PO Box 30088
Albuquerque, NM 87190-0088

Michelle K. Ostrye
PO Box 1945
Albuquerque, NM 87103

Julie J Vargas
PO Box 30088
Albuquerque, NM 87190-0088

Jay D. Hertz
PO Box 1945
Albuquerque, NM 87103

William R Keleher
PO Box 2168
Albuquerque, NM 87103-2168

Catherine F. Davis
PO Box 94750
Albuquerque, NM 87199-4750

Philip J. Montoya
Trustee
PO Box 159
Albuquerque, NM 87103

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

-22-