UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
Daniel William Cook
and Yolanda T. Cook,
        Debtors.                          No. 7 - 04-17704 - SA

### MEMORANDUM OPINION ON DEBTOR'S AMENDED
### MOTION TO RECONSIDER DISMISSAL OF SANCTIONS
### MOTIONS AGAINST WELLS FARGO BANK AND GARRETT

This matter is before the Court on the Debtor Daniel William Cook's Amended Motion to Reconsider Dismissal of Sanctions Motions against Wells Fargo Bank and Garrett (doc 902)("Motion") and his accompanying affidavit (doc 899).[1]  Mr. Cook is self-represented.  For the reasons set forth below, the Motion will be denied.[2]

### BACKGROUND

Pre-conversion, and after appointment of a Chapter 11 Trustee (order, doc 366, 7/19/06), Debtor and one of his related/controlled corporations filed motions against Wells Fargo Bank and Scott Garrett, Pamela Garrett and the Garrett Trust

_____

[1] This memorandum opinion was prepared some months ago, but its finalization and issuance are coming about only now because the Court refrained from working on and issuing the decision during the pendency of Debtor's Motion to Have the Hon. James Starzynski Disqualify Himself Pursuant to 28 U.S.C. §455 and Bankruptcy Rule 5004 for His Predetermination of the Action, His Appearance of Partiality and for His Deep-Seated Favoritism Towards Wells Fargo Bank ("Motion to Recuse") (doc 906), filed May 23, 2011 and then withdrawn July 22, 2011 (doc 918).

[2] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A); and these are findings of fact and conclusions of law as may be required by F.R.B.P. 7052.

("Garrett") (docs 619, 12/11/07; joinder 629, 12/19/07) seeking damages for willful violation of the automatic stay. The Court denied the motion at the preliminary hearing, finding that the actions complained of did not violate the automatic stay. (Order, doc 642, 1/23/08). The Court raised but did not address issues of standing of a debtor-out-of-possession or creditor to pursue sanctions for a stay violation.

Debtors moved to reconsider (doc 645, 1/25/08) and the Court entered an order that it would reconsider the matter upon submission of briefs and completion of an evidentiary hearing (doc 669, 2/12/08). In the meantime, several of Debtors' majority owned/controlled corporations filed a Second Motion for sanctions for violation of the automatic stay (doc 651, 1/28/08). They alleged substantially the same matters raised in the first sanctions motion: the state court action. The Court denied this Motion (order, doc 672, 2/13/08) as both an improper attempt to enjoin the state court from proceeding against non-debtor parties and because it appeared that Wells Fargo was not asserting any claims against either Debtors' or the estate's property.

Wells Fargo filed a Motion for Relief from Stay (doc 679, 2/19/08). Then, the Entities filed a third motion for sanctions for stay violations (doc 696, 2/26/08). Debtors joined (doc 722, 3/17/08). The third motion is addressed only to Garrett and

seeks an order "granting [the Entities] judgment[3] and the estate judgment" for willful stay violations (doc 696, p.1).  The motion reiterates all prior claimed stay violations and then argues that the Garrett Group filed a derivative action in 2003 (pre-petition) which was amended to name Wells Fargo as a defendant. The Entities claim that a continued prosecution of this derivative action violated the automatic stay because the derivative suit was property of Hydroscope Group, Inc. that had been "assigned" to Cook[4].  (Id., p.5 ¶ 16).  It also alleges a nefarious conspiracy between the Garrett Group and Wells Fargo that is an attempt to deprive the estate of assets.

On March 20, 2008, the Court converted the Chapter 11 case to Chapter 7.  Doc 726.

After a hearing, the Court granted Wells Fargo's stay motion, ordering that the automatic stay was both annulled and

---

[3]The Entities do not explain how they would be entitled individually to damages for a third-party's violation of the stay in someone else's bankruptcy.  It is fundamental that damages for a stay violation wound redound to either a debtor for personal damages or the estate for damages to the estate.

[4]This is a situation of the fox guarding the henhouse.  This transfer, effectively, would have given Cook the right to sue himself for harm he allegedly inflicted on Hydroscope.  "One suspects that if managers can devise any opportunity to avoid bringing a claim that would amount to reputational self-immolation, they will seize it."  Official Committee of Unsecured Creditors of Cybergenics v. Chinery (In re Cybergenics Corp.), 330 F.3d 548, 573 (3rd Cir. 2003)(analyzing a situation in which if a trustee is not appointed, debtors' management is unlikely to pursue fraudulent transfers that it made.)

modified.  (Order, doc 740, 4/21/08).  Debtors moved to reconsider (doc 743, 4/29/08).  The Court denied the motion to reconsider, finding that the order was clear on its face. (Order, doc 819, 10/08/08).

On September 15, 2008, the Court issued a Memorandum Opinion on the Motions for Sanctions for Violation of the Stay (doc 798). The Court ruled: "The only property at stake in the state court foreclosure case belongs to either the Corporate Entities or the estate.  The Court therefore concludes that neither the Debtors nor the Corporate Entities have standing to challenge actions taken in that case as a violation of the automatic stay."  The Court then denied the third motion for sanctions (order, doc 799, 9/15/08) and the substantive request to reconsider the second order denying sanctions (order, doc 800, 9/15/08).

The United States District Court had a pending adversary proceeding in which the Bankruptcy Court had suggested abstention.  Debtors then, between July 17, 2009 and October 29, 2009 filed more motions for sanctions for violations of the automatic stay in the District Court case.  The District Court referred them back to this Court, and this was the subject of the Memorandum Opinion (doc 884) from which the Orders issued that Debtor requests be reconsidered.

In a Memorandum Opinion (doc 884) entered on April 6, 2011, the Court cited three reasons to deny the motions.  It

Case 04-17704-nlj7    Doc 922    Filed 08/09/11    Entered 08/09/11 14:54:07 Page 4 of 29

implemented the denials in two separate Orders (doc 885 for Garretts and doc 886 for Wells Fargo).

First, the Court found that Debtor lacked standing to file motions for violation of the automatic stay that allegedly damaged the bankruptcy estate. The Court disagreed with Debtor's theory that the causes of action for stay violation were abandoned when the trustee filed a "Notice of Abandonment", ruling that Section 544 requires either an order or the closing of the case to effect abandonment. Because there was neither an order nor had the case closed, no property had been abandoned. The Court also found that furthermore, even if the case had closed, a cause of action for violation of the automatic stay is not "scheduled" property that is abandoned at closing; rather, under Section 544 it remains estate property.

Second, the Court reviewed the history of alleged automatic stay violations in this case. The Court both terminated and annulled the automatic stay (order, doc 740, 4/22/08). Nevertheless, the Court reviewed the action that was the alleged violation of the stay and found that there was no violation because 1) the action taken was against non-debtors by a creditor seeking foreclosure of those non-debtor's property and therefore not protected by the automatic stay, and 2) the action taken with respect to estate property was a defensive measure in response to

claims originated by the Debtor, also not protected by the automatic stay.

Third, the Court found that the state court had entered final judgment and under the Rooker/Feldman doctrine the bankruptcy court cannot act as a state appellate court. All this Court could do would be to apply New Mexico collateral estoppel rules to the state court judgment, which made specific findings that the action was not against the Debtors nor against their property.[5]

## THE MOTION FOR RECONSIDERATION

The main objection raised by Debtor is that this Court "fail[ed] to not [sic] address the estates' [sic] ownership of the cause [sic – should be "causes"; doc 898, p.1] of action belonging to the estate that wree [sic] destroyed on February 18, 2009 as noted in the two Motions for Sanctions." Doc 898, p.2. The Debtor then cites three grounds for reconsideration: 1) Debtor has standing because "[a]ll assets of the estate were previously abandoned with this Court's expressed consent followed by the Court's implied consent and endorsement"; 2) contrary to the Memorandum Opinion, the automatic stay was never terminated, and 3) Rooker/Feldman and collateral estoppel do not apply

---

[5] Notwithstanding that ruling, the Court does not consider that it is in all instances precluded from ruling differently from a nonbankruptcy court concerning property over which it has exclusive jurisdiction by virtue of a bankruptcy filing. However, that was the ruling in this instance.

because the state court final orders were entered in violation of the automatic stay.

Debtor quotes from Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000):

> Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.

(Citation omitted.) Debtor argues that his Motion is supported by sections (2) and (3). Debtor's quote omits the last sentence of the paragraph: "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."

The Court has reviewed page 4 of the Motion several times and finds it not understandable. First, Debtor states that on April 19, 2010 District Court Judge Judith Herrera "confirmed this Court's implicit confirmation of the Trustees [sic] correct abandonment on July 1, 2009 of all estate property." This Court has not implicitly or explicitly confirmed that the Trustee abandoned anything on July 1, 2009. In contrast, on April 15, 2009, in the Amended Memorandum Opinion on Abandonment (doc 836) this Court stated:

> Under 11 U.S.C. § 554, there are three methods by which the property in a debtor's estate can be abandoned. See, e.g., Miller v. Pacific Shore Funding, 287 B.R. 47, 51 (D. Md. 2002). First, after notice and

hearing, the estate may abandon any property that is "burdensome" to the estate or is of little value. Id. § 554(a). Second, on motion by a party, the court may order the abandonment of certain properties. Id. § 554(b). Third, once a bankruptcy case is closed, any assets that have been properly scheduled, but not otherwise administered, are abandoned by operation of law. Id. § 554(c).

In this case there was no abandonment under § 554(a). The Trustee did not send out a notice of proposed abandonment to those parties requesting notice. Without effective notice under § 554(a) there can be no abandonment. Morlan v. Universal Guaranty Life Insurance Co., 298 F.3d 609, 618 (7th Cir. 2002) (Attempted abandonment by trustee failed when trustee did not comply with the statute. "The requirements are exacting."); Sierra Switchboard Co. v. Westinghouse Electric Corp., 789 F.2d 705, 709 (9th Cir. 1986) (Even if Trustee intends to abandon, it is ineffective without notice to creditors.); Jones v. Cendant Mortgage Corp. (In re Jones), 396 B.R. 638, 647 (Bankr. W.D. Pa. 2008)("De facto abandonment cannot occur in bankruptcy.") (Citation omitted.); Cemco, Inc. v. Howard Nat'l Corp. (In re Howard Nat'l Corp.), 70 B.R. 278, 282 (N.D. Ill. 1987)(Bankruptcy Rule 6007 requires reasonable notice to be given to all creditors.); First Carolina Financial Corp. v. Trustee of Estate of Caron (In re Caron), 50 B.R. 27, 29 (Bankr. N.D. Ga. 1984) (Consent of debtor, creditor and trustee does not obviate need for notice.)

In this case there was also no abandonment under § 554(b). The Court has not made findings that any property was burdensome to the estate or of inconsequential value and benefit to the estate, and has entered no orders abandoning property. See Vu v. Kendall (In re Vu), 245 B.R. 644, 647 (9th Cir. BAP 2000). The case has not been closed, so § 554(c) is inapplicable.

(doc 836, pp. 4-5). Except for several notices filed after this Memorandum Opinion, the next document filed in the case was the Trustee's "Abandonment of Property" (doc 844). Anyone with even a cursory familiarity with the Memorandum Opinion on Abandonment would realize that the Trustee's filing accomplished nothing

Page -8-

other than to state his intent to abandon property effective as of the closing of the case. Abandonment requires a court order or the closing of a case. Whatever Judge Herrera did was not a bankruptcy court order and in any event took place in a completely unrelated proceeding that deals with the aftermath of the foreclosure of Debtor's former residence. Next, Debtor makes some reference to this Court saying "okay" at a hearing on October 2, 2008.[6] "Okay" is not a court order either and no amount of stubborn repetition motivated by a desperate need for reality to be otherwise can change that.

Page 4 of the Motion then seems to suggest that the Bankruptcy Court did not have jurisdiction over the main bankruptcy case during the pendency of the recommendation to the District Court that it adopt Proposed Findings of Fact and Conclusions of Law in adversary 04-1240 and order abstention.

---

[6]The Court has listened to that portion of the October 2, 2008 hearing to which Debtor refers. Chris Pierce, attorney for the Garrets, was discussing scheduling issues related to 1) the issue of Hydroscope Group, Hydroscope Inc., USA, Hydroscope Canada Inc. and CBM Group, Inc.'s ("Entities") collective objection to the Trustee's withdrawal of a Report of No Distribution, with the Entities' seeking a declaration that the Report of No Distribution had effectively abandoned the assets; with 2) the Debtor's Motion to Compel Abandonment (doc 786). Mr. Pierce suggested that the Court should rule on the first issue first, because if the Court decided the first issue in the Entities' favor there would be no need for a ruling on the second issue because the assets would already be abandoned. The Court said "okay" and then turned to Mr. Montoya for his input. He stated that if the Entities prevailed, he would file a Notice of Abandonment. Again, the Court said "okay." Clearly both "okays" meant "I understand" only and not "I approve and so order."

Page -9-

Debtor cites no legal authority for this proposition.  In fact, as the District Court noted when it referred these motions back to the Bankruptcy Court, the automatic reference of bankruptcy cases to the Bankruptcy Court had <u>not</u> been withdrawn in this case.  Therefore, all administrative matters, <u>e.g.</u>, stay motions, sanctions motions, discovery motions, etc., properly remained before the Bankruptcy Court.  <u>See</u> Fed.R.Bankr.P. 5011(c):

> The filing of a motion for withdrawal of a case or proceeding or for abstention pursuant to 28 U.S.C. § 1334(c) shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion.

Page 4 of the Motion also states "Additionally, no order of this Court ever terminated the Automatic Stay."  This is utterly wrong.  <u>See</u> docket 740 (Order Granting Stay Relief, filed 4/21/08, which ordered:

> The automatic stay is both annulled ... and modified, with respect to any property in which either the estate or the Debtors claim an interest, such that any party is entitled to seek, or to continue to seek, whatever state law or other remedies it wishes with respect to the property, including but not limited to adjudications of liability, lien rights and amounts owed.);

docket 741 (Minutes of 4/17/08 hearing at which automatic stay was modified and annulled); docket 773 (Order Reiterating, Clarifying and Expanding As Needed April 21, 2008 Order Granting Stay Relief and Other Relief, filed 08/05/08); docket 819 (Order

Page -10-

Denying Motion for Reconsideration of Order Granting Relief from Stay, filed 10/08/08).

It is true that this Court has never ruled on whether there was a stay violation before the modification and annullment. Nor would it have been proper to do so. The only motions for sanctions, before the ones involved here, were filed by the Debtor in Possession and the Entities before the case converted from Chapter 11 to Chapter 7. Upon conversion, Debtor and the Entities lost standing[7] to pursue stay violations[8]. After

---

[7] Article III of the Constitution restricts federal court jurisdiction to "Cases" and "Controversies." <u>Summer v. Earth Island Institute</u>, 129 S.Ct. 1142, 1148 (2009). The doctrine of standing requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant <u>his</u> invocation of federal-court jurisdiction. <u>Id.</u> at 1149. (Citation omitted. Emphasis in original.) Standing under Article III requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling. <u>Monsanto Co. v. Geertson Seed Farms</u>, 130 S.Ct. 2743, 2752 (2010)(Citation omitted.) In this case, Debtor lacks standing because he cannot recover anything unless the unsecured creditors are paid in full. Creditors will not be paid in this no-asset case. Therefore, Debtor has no injury the court can redress with a favorable ruling. He has no interest in the outcome of any alleged stay violations. He had standing as a debtor-in-possession, but lost it when the when the trustee was appointed and when the case converted.

[8] Debtor apparently does not understand (or refuses to understand) the Court's repeated statements that once the case converted to Chapter 7 <u>only</u> the Chapter 7 Trustee had standing to pursue estate causes of action. <u>See, e.g. Mark Bell Furniture Warehouse, Inc.; v. D.M. Reid Assoc., Ltd. (In re Mark Bell Furniture Warehouse, Inc.)</u>, 992 F.2d 7, 9-10 (1st Cir. 1993)(Federal courts are duty bound to inquire into standing. Standing requires personal injury traceable to the allegedly
(continued...)

unlawful conduct.  A Chapter 7 Trustee, not the Chapter 7 debtor,
is responsible for collecting all property of the estate and
reducing it to money.  If a Chapter 7 estate is insolvent, the
debtor lacks standing to challenge bankruptcy court judgments
unless they directly affect the scope of the debtor's
discharge.)(Note: Debtors have alleged that the estate is
administratively insolvent.  <u>See</u> Doc 786 (Debtors' Motion to
Compel Abandonment).  Therefore, Debtors have acknowledged that,
under no conditions, will they receive anything from the estate
after paying creditors in full.  Therefore, nothing they do or
say should influence anything in the case.  In other words, their
concerns at this point become irrelevant.); <u>Perkins v. Teachers'
Retirement System of Illinois (In re Perkins)</u>, 902 F.2d 1254,
1257-58 (7th Cir. 1990):

> Section 704(1) authorizes and obligates the
> trustee to collect and reduce to money the property of
> the estate for which such trustee serves.  11 U.S.C. §
> 704(1).  <u>See also</u> 11 U.S.C. § 323 (the trustee is the
> representative of the estate and has the capacity to
> sue and be sued).  The authority to collect the
> debtor's assets is vested exclusively in the trustee.
> <u>Koch Refining v. Farmers Union Central Exchange, Inc.</u>,
> 831 F.2d 1339, 1342 (7th Cir. 1987); <u>Begier v. Price
> Waterhouse</u>, 81 B.R. 303, 304 (E.D. Pa. 1987); <u>Goldberg
> v. Weichert ( In re Timberline Energy, Inc.)</u>, 70 B.R.
> 450, 452-53 (Bankr. N.D. N.Y. 1987);  <u>National
> Equipment & Mold. Corp. v. Apollo Tire Co., Inc., (In
> re National Equipment & Mold. Corp.)</u>, 60 B.R. 133, 135
> (Bankr. N.D. Ohio 1986); <u>Durham v. Yancey (In re
> Yancey)</u>, 46 B.R. 621, 623 (Bankr. E.D. Pa. 1985).  A
> trustee may be divested of this exclusive authority
> only in narrow circumstances.  When (a) the trustee
> unjustifiably refuses a demand to pursue the action;
> (b) the creditor establishes a colorable claim or cause
> of action; and (c) the creditor seeks and obtains leave
> from the bankruptcy court to prosecute the action for
> and in the name of the trustee, then may an individual
> creditor or creditors' committee prosecute an action
> originally vested in the trustee.  <u>Louisiana World
> Esposition v. Federal Insurance Company</u>, 858 F.2d 233,
> 247 & n. 14 (5th Cir. 1988); <u>Koch Refining</u>, 831 F.2d at
> 1346-47 & n. 9.

> None of these prerequisites were met prior to the
> filing of the motion by the Roukas.  When a third party
> (continued...)

Page  -12-

Case 04-17704-nlj7   Doc 922   Filed 08/09/11   Entered 08/09/11 14:54:07 Page 12 of 29

[8] (...continued)
tries to assert an action still vested in the trustee,
the court should dismiss the action.  Pierson & Gaylan
v. Creel & Atwood ( In re Consolidated Bancshares,
Inc.), 785 F.2d 1249, 1253-54 (5th Cir. 1986); Mitchell
Excavators, Inc. v. Mitchell, 734 F.2d 129, 131-32 (2nd
Cir. 1984).

Similarly, in this case neither the Debtors nor the Entities
established that the trustee unjustifiably refused a demand to
pursue actions for violation of the automatic stay.  Neither did
they prove to this Court that their claims were "colorable"; at
every preliminary hearing on the numerous stay violation motions
the Court initially found that the actions complained of simply
were not stay violations.  Although the Court ultimately denied
all of the motions as being brought by parties with no standing,
the Court remains convinced that no stay violations occurred.
Finally, neither Debtor nor his Entities sought permission from
this Court to pursue the stay violations in the Trustee's name
for the benefit of the creditors and estate.  In fact, the
motions they filed sought damages on their own behalf to the
exclusion of the creditor body.  See Third motion for sanctions,
(doc 696, p.1) and n.1, supra.; Ardese v. DCT, Inc. (In re
Ardese), 2006 WL 3757916 at *3-4 (E.D. Ok. 2006)(Section
541(a)(1) creates a bankruptcy estate comprised of "all legal or
equitable interests of the debtor in property as of the
commencement of the case."  Section 541(a)(7) provides for
inclusion of "any interest in property that the estate acquires
after commencement of the case."  A plaintiff may assert only his
own rights and interests.  The Bankruptcy Code provides that the
bankruptcy trustee is the representative of the estate and it
also grants the trustee the capacity to sue and be sued.  This
implies that only the trustee can assert causes of action
belonging to the bankruptcy estate.  Chapter 7 debtors generally
lack standing.); Zavala v. Wells Fargo Bank, N.A. (In re Zavala),
444 B.R. 181, 189 (Bankr. E.D. Cal. 2011)(In federal court, one
may not proceed with theoretical arguments or purport to advance
the rights of other persons.  To qualify as a party with
standing, the litigant must show an invasion of a legally
protected interest that is concrete and particularized and actual
or imminent.  The Bankruptcy Code's automatic stay provisions
protect either the debtor or the estate.  The stay provisions do
not grant debtors "co-trustee" powers to control property of the
estate.  " The Debtors may not assert rights of the bankruptcy
estate against third-parties, such as the alleged claim for
violating the automatic stay as it applies to property of the
                                        (continued...)

conversion, the Chapter 7 Trustee did not pursue the motions and affirmatively stated that he would not.  Therefore, there was never a hearing on alleged violations.  The Court cannot rule without evidence.  Furthermore, without anyone with standing requesting relief any opinion the Court would have issued on the motions would have been an improper advisory opinion as well as based on absolutely no evidence.

One fact is crystal clear.  The stay was modified and annulled on April 17, 2008.  After April 17, 2008 there could be no violation of the automatic stay.  Anything after that date is not relevant.  The orders on which Debtors seeks reconsideration argue that on February 18, 2009 the state court entered a judgment adverse to the Debtors and/or the Entities.  Nothing on February 18, 2009 could have violated a stay that was modified and annulled two years earlier.  And, under Federal law, Debtor absolutely lacks standing to assert anything on behalf of an

_____

[8](...continued)
estate.  The Debtors do not have standing to assert the violation of the automatic stay alleged in the Complaint."; <u>Securities Investor Protection Corp. v. Madoff (In re Madoff)</u>, 443 B.R. 295, 311 (Bankr. S.D. N.Y. 2011)(Third parties violate the automatic stay when they assert causes of action belonging to the estate under sections 362 and 541 because the trustee has the exclusive standing to prosecute those actions.); <u>In re Young</u> 439 B.R. 211, 217 (Bankr. M.D. Fla. 2010)(The trustee is the only person with standing to collect and administer property of the estate for the benefit of the creditors.); <u>Estate of B.J. McAdams, Inc. v. Ralston Purina Co. (In re B.J. McAdams, Inc.)</u>, 154 B.R. 809, 811 (N.D. Ga. 1993)(Upon appointment, a chapter 7 trustee is the sole representative of the estate and the debtor thereafter lacks standing to pursue estate claims.)

estate which has not paid creditors in full.  Despite Debtor's
proclamations that he believes he is a fiduciary for the
Entities' creditors, he is not.  He received a discharge.  He no
longer has any obligations toward those creditors.  And, his
claim of fiduciary duty is belied by the fact that the related
Entities have filed for judgments for themselves, not for the
estate.  Finally, there is nothing in the Bankruptcy Code that
allows a discharged debtor to assume powers over property of the
estate in an attempt to recover for creditors.

Before turning to the facts that Debtor claims the Court
misapprehended, the Court will remind the Debtor of two things
about the automatic stay that he overlooks.  First, the automatic
stay does not protect anyone except the debtor or property of the
debtor or of the estate.  Memorandum Opinion on Sanctions for
Violation of the Automatic Stay, doc 798, p.4.  See also
Memorandum Opinion, doc 884, p.14 ("It is well-established that
stays pursuant to § 362(a) are limited to debtors and do not
encompass non-bankruptcy co-defendants.")(Citation omitted.)
Second, the automatic stay does not prevent a debtor's defendants
from asserting their defenses to a debtor's claim.  Id. p.14-15
(Citations omitted.)

Debtor states thirty-five paragraphs of facts which he
claims the Court misapprehended.  The Court has reviewed them
thoroughly and finds that they are all either 1) not in fact

misapprehended, 2) irrelevant, or 3) conclusory and based on an incorrect understanding of the law. The Court will not copy the facts into this Memorandum Opinion, but they are deemed incorporated by reference.

Fact 1 asserts that the claims against Wells Fargo that were dismissed on February 18, 2009 were estate claims. This is irrelevant because claims by the Debtor against Wells Fargo were not subject to the automatic stay. Furthermore, the stay had been terminated and annulled about two years previously.

Fact 2 asserts again that the claims against Wells Fargo and also the claims against Garrett were pre-petition individual claims that were scheduled. Again, irrelevant because they are claims by a debtor, not against a debtor.

Fact 3 asserts that various Entities (but not HCAN) transferred claims to the Debtors prepetition. Irrelevant.

Fact 4 asserts that Debtor asserted these claims in Adversary No. 04-1240-S. This is true, but irrelevant. This Court found that that adversary was duplicative of a pending state court case (in which the Debtor was in a precarious position and therefore seeking a more favorable forum).

Facts 5, 6 and 7 are an irrelevant recitation of the content of three adversary pleadings dealing with abstention.

Fact 8 reiterates that the February 18, 2009 state court summary judgment destroyed the estate owned causes of action.

Irrelevant because these were debtor claims, not claims against a debtor. Also, this was two years after the stay was annulled and terminated.

Fact 9 and 10 should be read together. The Garrett Trust filed a complaint in state court asserting derivatively the claims of Hydroscope Group against Wells Fargo Bank, which were some of the claims owned by the estate. These claims were also dismissed in the February 18, 2009 state court order. First, the fact that an individual shareholder files a derivative suit is not definitively an appropriation of corporate property.

> A shareholder ordinarily cannot, as an individual as distinguished from a representative of the corporation, sue directors or other corporate officers for mismanagement, misappropriation, corporate waste, negligence or the like on a cause of action belonging to the corporation. The remedial rights of minority shareholders with respect to wrongs committed against the corporation by the officers and directors in the management of corporate affairs are derivative rights, and any action taken by the shareholders to redress such wrongs must be for the benefit of the corporation.
> The policy supporting the rule forbidding direct shareholder suits against management is most compelling when the plaintiff is similarly situated to other shareholders, suffers the same injury, and retains the same opportunity to be made whole by a corporate recovery from the wrongdoer. For example, where the shareholder's claim is that he or she has been injured by a fall in the price of the corporation's stock, the claim is probably derivative in nature. The exception to the rule forbidding direct shareholder suits against management is most compelling where the alleged wrong unfairly affected the minority shareholders but did not work an injury either to the corporation or its majority shareholders. Such an example would be when the board of directors takes an action that has the purpose and effect of reducing the voting power of the minority, nonmanagement stockholders.

Page -17-

> A claim of stock dilution and a corresponding reduction in a stockholder's voting power is an individual claim.

12B Fletcher Cyclopedia of the Law of Corporations § 5924 (footnotes omitted.)  Garrett filed three adversaries in connection with Debtors' bankruptcy: 06-1135, 08-1074 and 08-1089.  The Court has taken judicial notice of the complaints, not for the truth of their contents, but to review the allegations made by the plaintiff.

In 06-1135, the Garretts allege, among other things, that Debtor sold Garrett 900,000 shares of common stock in Hydroscope for $2,000,000 in a private offering.  Garrett alleges that Debtors were the majority owners of Hydroscope and that they misrepresented that Hydroscope owned stock of various other corporations that had unencumbered assets, and that proceeds from his stock purchase would be used to pay off Wells Fargo Bank and that Garrett would be a board member.   Garrett was made a board member, but then removed in less than one year by Debtors who told him that they were the majority shareholders and could act unilaterally.  Afterwards, Debtors refused to disclose financial information regarding Hydroscope or Wells Fargo's loan, and then illegally issued $2,000,000 of preferred stock to themselves that subordinated Garrett's holdings.  Debtors then sought merger opportunities and attempted to force minority shareholders to sell their stock back to them for pennies on the dollar.

In 08-1074, the Garretts seek a determination that their claims are not dischargeable under Sections 523(a)(2)(A), 523(a)(4) and 523(a)(6). The facts alleged are similar to those in 06-1135.

In 08-1089, the Garretts sought an injunction against the Debtors to prevent them from implementing a Creditor and Shareholder Rights Plan for Hydroscope that proposed to, or purportedly had, issued an additional 9,000,000 shares of Hydroscope to another corporation formed or controlled by the Debtors for the express purpose of diluting Garrett's interests. This adversary was dismissed on the Plaintiff's motion after they were granted an injunction by the state district court based on the same allegations.

From the allegations in these three adversaries, it is quite clear to the Court that any action filed by Garrett in the state court was personal to him, and not an appropriation of Hydroscope's rights which were purportedly assigned to the Debtors. Furthermore, fact 10 demonstrates that, even if this had been a misappropriation of estate assets, there were no damages. The asserted claims were dismissed out on summary judgment on February 18, 2009. If the claims had no merit, the estate had no damages when they were dismissed.

Fact 11 states that, as Debtor understands it, Wells Fargo and Garrett agreed the claims dismissed in February 2009 were

Page -19-

protected by the automatic stay.  It is not relevant what the
creditors agreed to or what Debtor believes they agreed to.  The
fact is that claims brought by a debtor are not subject to the
automatic stay.

Fact 12 states that the claims dismissed on February 18,
2009 were the same claims under consideration by the United
States District Court until it decided to abstain in March 19,
2009.  First, the District Court was definitely not considering
the "claims".  It was considering only whether to adopt the
Bankruptcy Court's recommendation to abstain.  Second, the stay
had been lifted and annulled two years earlier.

Fact 13 states that at a hearing on February 18, 2009, the
attorney for Wells Fargo argued that Debtor could not defend his
property interests.  Fact 13 does not state what the outcome of
this argument was.  However, as noted in the Memorandum Opinion,
doc 885, p. 15-16, the state court made specific findings that
Wells Fargo did not sue the Cooks and that Wells Fargo's summary
judgment motion did not seek a recovery against the Cooks or any
assets owned by the Cooks. (quoting Debtor's motion for
sanctions, doc 847, exhibit 8).  Therefore, it is totally unclear
to this Court what property interests Debtor might have been
defending if he were neither sued nor was the bank attempting
recovery of his property.  Obviously, Debtor is upset because the
state court allowed foreclosure on assets in corporations he

controlled or owned, but the automatic stay does not extend to such corporations.

Fact 14 states that Wells Fargo's attorney told the state court judge that the claims being dismissed were estate claims against the bank. That may be true, but the automatic stay does not prohibit that. Furthermore, the stay had been lifted and annulled two years earlier.

Fact 15 states that Debtor tried to tell the state court judge that the claims were protected by the automatic stay. They were not.

Fact 16 states that "The claims of HCAN alleged to be owned by the estate were destroyed by the entry of the Summary Judgment Order of February 18, 2009, as HCAN's claims have the same factual nexus as the other claims dismissed the same day." First, Fact 3 discussed above asserts that various Entities (but not HCAN) transferred claims to the Debtors prepetition. (Emphasis added.)[9] If the claims were not transferred, the

---

[9]Confusion such as this has permeated this case. Debtors set up corporation after subsidiary/related corporation from Nevada to Canada, no doubt properly documented with all corporate formalities followed, but were not forthcoming to their creditors about which owned what or what transferred from where to where. Early in the case the Debtors proved that certain allegedly very valuable patents had been transferred from one corporation to the Debtors individually by their assumption of that corporations' debts and the payment of $0.89, as documented on the smallest size Post-It note. In retrospect, the Debtors' assumption of the corporation's debts, made on the verge of bankruptcy, provided little if any consideration for the valuable transfers. Many of
(continued...)

automatic stay does not protect non-debtors.  If the claims were transferred, they were claims by a debtor and not protected by the automatic stay.  Whether HCAN's claims were incidentally diminished in value by the state court ruling is really none of this Court's concern.

Fact 17 states that the state court judge asked Wells Fargo why it had not included the Debtors' exempt property in its summary judgment motion.  This may be true, but no transcript was provided.  It is also irrelevant.  Creditors generally may pursue debt collection in any order they choose.

Fact 18 states that, in response to the question in fact 17, Wells Fargo's attorney told the judge that they would be able to foreclose later.  This is a true statement.  The automatic stay was lifted and annulled two years earlier as to all parties and all property.

Fact 19 alleges that Wells Fargo's judgment destroyed the Debtor's exempt property.  It is unclear what Debtor means.  If Debtor means Wells Fargo had a right to foreclose, i.e. a lien, the lien was never avoided in the bankruptcy case, nor could it be.  See Section 522(c)(2) (Exempt property is not liable during or after the case for any prepetition debt, except a debt secured by a lien that is not avoidable or void) and section 522(f) (A

---

[9](...continued)
the state lawsuits and adversary proceedings have attempted to unscramble the resulting mess with virtually no progress.

debtor may avoid judicial liens and nonpossessory, nonpurchase-money security interests in household goods, tools of the trade and health aids. There is no provision for a chapter 7 debtor to avoid a voluntarily granted lien.) If Debtor means that the value of his exemption decreased because Wells Fargo foreclosed on property of the Entities, that is too tenuous and speculative to state a claim.

Fact 20 states that the Debtors committed to repay the debts of the Entities, and cannot do so now that the claims were destroyed by the summary judgment. This is not relevant. The stay does not protect actions brought by the Debtor. The automatic stay was also terminated two years previously.

Facts 21 to 31 all try to convince the Court that the assets really were abandoned earlier in the case despite the Court's Memorandum Opinion and Order that quite specifically rule otherwise (docs 838, 839). For example, fact 21 states that all creditors were noticed of possible abandonment of assets at least three times and that only the Trustee, Garretts and Wells Fargo objected. For one thing, this is not true; the Trustee did not notice his proposed abandonments. Furthermore, three objections are more than sufficient to prevent the abandonment. The point is, no orders abandoning property were entered[10]. Other facts

---

[10] A notice to creditors of the proposed abandonment is not, in itself, sufficient. The purpose of notice is to give

(continued...)

Page -23-

claim that the Court said "okay" in response to the parties discussion of the timeline in which the Court should rule on the various pending matters.  This issue was addressed above, and "okay" is not a court order.

Fact 32 states that the Trustee asked if certain adversaries would be dropped if he would abandon property.  This is not relevant, nor does it constitute a court order.

Fact 33 deals with a response by some unidentified person to the Trustee's question in fact 32, and is also irrelevant.

Fact 34 claims that both the Trustee and Debtors' attorney told the Debtors that all property had been abandoned and that it qualified under Section 554(a).  It is not relevant what the Debtors were told.  Abandonment procedures must be strictly followed to protect the creditors overall.  No order or case closing means no abandonment.

Fact 35 states that Debtor is a plaintiff in an adversary proceeding (mentioned above) whose reference was withdrawn by the District Court (the Honorable Judith Herrera) and is currently pending against his former mortgage company.  This is also not relevant.  The fact that the District Court withdrew the

---

[10](...continued)
creditors the opportunity to object.  If there are objections, the Court must have a hearing and enter an Order.  In this case there were three objections and no order.

reference for a single, unrelated matter has no impact on the rest of the case.

## ADDITIONAL COMMENT

In a gratuitous section of Debtor's Motion starting at page 11 Debtor relates that he has filed a RICO lawsuit against his creditors and their attorneys, alleging that the original Trustee Linda Bloom accepted bribes to make certain misrepresentations to this Court. If the Debtor has any evidence to support this extraordinarily grave charge he should provide it to the United States Attorney immediately.

In this section he also states that the Entities' creditors believe the Court has become biased and has urged the attorneys to "churn" the estate for three years. On the facts of this case, this statement demonstrates a fundamental lack of knowledge. This case is a no asset case and always has been. With no assets, there is nothing worth churning the estate for and never has been anything to churn.

## SUGGESTION

"Has the Court's objectivity been compromised?" Motion, doc 898 p.12. "There is an expressed concern [amongst the Entities' creditors] the Court may have lost its ability to be objective in the remaining matter before this Court. It is respectfully requested the Court address this concern[.]" Id., p.17.

Federal Rule of Bankruptcy Procedure 5004 governs disqualification of a bankruptcy judge. The rule provides that:

> (a) Disqualification of Judge. A bankruptcy judge shall be governed by 28 USC § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case.

Fed. R. Bankr.P. 5004(a). Section 455 of the United States Code states, in relevant part, that:

> (a) Any justice, judge, or magistrate [judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>> (1) Where he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; ....

28 U.S.C. § 455(a).

> While 28 U.S.C. § 455 imposes a duty on the Court to recuse where any of the statutory grounds exist, there is a corresponding duty not to do so if cause for recusal has not been shown. In re Computer Dynamics, Inc., 253 B.R. 693, 698 (E.D. Va. 2000) ("[A] judge is equally obliged not to recuse himself when there is no necessity, as he is to recuse himself when there is."); Armstrong v. Potter (In re Potter), 2002 WL 31802978 n. 1 (10th Cir. BAP 2002) ("A judge's duty to hear cases is not so ephemeral that it dissipates at the first sight of any potential bias or partiality toward one of the litigants."); In re Womack, 253 B.R. 245, 246 (Bankr. E.D. Ark.2000) ("Although the Court has a duty to recuse where any of [the § 455] factors exist, there is a concomitant duty not to recuse on unsupported, irrational or tenuous speculation."). As Justice (then Judge) Breyer explained in In re Allied-Signal, Inc., 891 F.2d 967, 970 (1st Cir. 1989), courts must exercise great care in considering motions for recusal so as to

discourage their use for purposes of judge shopping or delay:

> When considering disqualification, the district court is not to use the standard of mere ... suspicion ... that is because the disqualification decision must reflect not only the need to secure public confidence through proceedings that appear impartial, but also the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.

> See also In re Nat'l Union Fire Ins. Co., 839 F.2d 1226, 1229 (7th Cir. 1988) ("Judges have an obligation to litigants and their colleagues not to remove themselves needlessly, because a change of umpire in mid-contest may require a great deal of work to be redone ... and facilitate judge-shopping." (citation omitted)); United States v. Pungitore, 15 F.Supp.2d 705, 715 n. 4 (E.D. Pa. 1998) ("A liberal recusal policy would encourage judge shopping."); Scott v. Pryor ( In re Chandler's Cove Inn, Ltd.), 74 B.R. 772, 773 (Bankr. E.D. N.Y. 1987) ("[R]ecusal motions which are too liberally granted are tantamount to unilateral 'judge shopping' and may be used for a delaying tactic, for their disposition requires a serious investment of judicial time and thought.").

In re Haas, 292 B.R. 167, 175-76 (Bankr. S.D. Ohio 2003).

"Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  Liteky v. United States, 510 U.S. 540, 555 (1994).

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person.  But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.  As Judge Jerome Frank pithily put it: "Impartiality is not gullibility.  Disinterestedness does not mean child-like innocence.  If the judge did not form

> judgments of the actors in those court-house dramas
> called trials, he could never render decisions." <u>In re</u>
> <u>J.P. Linahan, Inc.</u>, 138 F.2d 650, 654 (CA2 1943).  Also
> not subject to deprecatory characterization as "bias"
> or "prejudice" are opinions held by judges as a result
> of what they learned in earlier proceedings.  It has
> long been regarded as normal and proper for a judge to
> sit in the same case upon its remand, and to sit in
> successive trials involving the same defendant.

<u>Id.</u> at 550-51.

As noted above in footnote 1, after filing this motion, Debtor filed and then withdrew his Motion to Recuse (doc 906; withdrawn by doc 918).  If Debtor believes he can refile that motion consistent with Bankruptcy Rule 9011, he is free and welcome to do so.

That said, the Court also hastens to assure Debtor that the Court does not view Debtor as a "thoroughly [or even less than thoroughly] reprehensible person".  The Court does view the Debtor as a self-admitted "pragmatic anal engineer with strong religious convictions"[11] who not too long ago was possessed, directly or indirectly, of considerable assets, including a lovely home and very promising technology and business opportunities arising from his creativity and hard work, and who since then has suffered not only the loss of that property but the far more massive personal losses of a spouse that he obviously deeply loved as well as of other family members.  Thus

---

[11] By quoting Debtor's candid description of himself, the Court of course is not deprecating Debtor.

Page -28-

the Court sees a litigant driven by grief and a sense of what might have been, unable to let reality intrude and dictate an end to the litigation and to begin to find closure. The Court's sympathy for Debtor's situation of course cannot create facts or law where none otherwise exist.

## CONCLUSION

For the reasons stated herein, the Court will enter an Order Denying Debtor's Amended Motion for Reconsideration.

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: August 9, 2011

Copies to:

Daniel William Cook
920 Galeras Street NW
Albuquerque, NM 87120

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

Michelle K. Ostrye
PO Box 1945
Albuquerque, NM 87103

Chris W Pierce
PO Box 30088
Albuquerque, NM 87190-0088

Jay D. Hertz
PO Box 1945
Albuquerque, NM 87103

Julie J Vargas
PO Box 30088
Albuquerque, NM 87190-0088

Catherine F. Davis
PO Box 94750
Albuquerque, NM 87199-4750

William R Keleher
PO Box 2168
Albuquerque, NM 87103-2168

Philip J. Montoya
Trustee
PO Box 159
Albuquerque, NM 87103