UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
Daniel William Cook
and Yolanda T. Cook,
     Debtors.                 No. 7 - 04-17704 - SA

**MEMORANDUM OPINION ON DEBTOR DANIEL W. COOK'S
MOTION TO ALTER OR AMEND FINAL DECREE, OR ALTERNATIVELY
VACATE [FINAL DECREE], REINSTATE AUTOMATIC STAY, AND TO
RETAIN JURISDICTION FOR ALL MATTERS RELATED TO THE
BANKRUPTCY TO AFFORD CONSTITUTIONAL RIGHTS GRANTED BY
<u>ART 1, SECTION 8, CLAUSE 4 OF THE U.S. CONSTITUTION</u>**

This matter is before the Court[1] on Debtor Daniel W. Cook's

Motion to Alter or Amend Final Decree, or Alternatively Vacate

[Final Decree], Reinstate Automatic Stay, and to Retain

Jurisdiction for All Matters Related to the Bankruptcy to Afford

Constitutional Rights Granted by Art 1, Section 8, Clause 4 of

the U.S. Constitution (doc 941) as amended and supplemented by

doc 942 (together the "Motion").  Mr. Cook is self-represented.

For the reasons set forth below, the Motion will be denied.[2]

---

[1] Judge Starzynski retired on August 13, 2012 upon the
completion of his 14 year appointment as Bankruptcy Judge.  On
August 3, 2012 the U.S. Court of Appeals for the Tenth Circuit
entered an Order of Recall United States Bankruptcy Judge James
S. Starzynski for a period up to and including December 31, 2012.
Judge Starzynski was sworn in at the start of the business day on
August 14, 2012.  Because this Chapter 7 was closed shortly
thereafter, on August 21, 2012, there was no need to assign the
case to a new judge.  Judge Starzynski remains the presiding
judge in this case.

[2] The Court has subject matter and personal jurisdiction
pursuant to 28 U.S.C. §§1334 and 157(b); this is a core matter
concerning administration of the estate, 28 U.S.C. §157(b)(2)(A);
and these are findings of fact and conclusions of law as may be
required by Rule 7052 F.R.B.P.

The thrust of the Motion is that Mr. Cook claims that the estate was not fully administered and should not have been closed by the final decree. In his argument, he admits that section 350[3] would allow him to seek a reopening of the case after the two appeals he has pending in the Tenth Circuit Court of Appeals are (presumably) decided in his favor. However, he believes it would be better to simply reopen the case now and leave it open, allow the Chapter 7 Trustee to be discharged and to have his bond cancelled, so that he and he alone can administer estate assets. Mr. Cook insists that the estate has damage claims from stay violations "and other causes" against Wells Fargo Bank and the Garretts that have a "supportable value" of $5.5 billion. He argues that granting this relief will eliminate the issues pending before the Tenth Circuit, so that Court would no longer need to address them. Alternatively, vacating the final decree and re-imposing the automatic stay would reestablish the status quo until the Tenth Circuit (presumably) rules in his favor and refers the case back to this Court for further processing of the "violations and causes." He also wants the Court to retain jurisdiction over all matters to afford him the (unspecified) rights granted by Art. 1, section 8, clause 4 of the U.S. Constitution. Finally, he argues that the closing of this case

---

[3] All references to "section" are to title 11 of the United States Code unless otherwise indicated.

has denied him a fresh start because if the case is not open he cannot pursue "possible lien avoidance" for his exempt property.

## THE ARTICLE I ARGUMENT

> The Constitution states that "Congress shall have the Power to … establish … uniform Laws on the subject of Bankruptcies throughout the United States." U.S. CONST. art. I, § 8. Not only is there no constitutional right to file bankruptcy, but Congress need not even create a bankruptcy law. In fact, there was (with three short unsuccessful exceptions) no bankruptcy law for more than the first 100 years of our history. See generally Charles Warren, Bankruptcy in United States History 60-85 (1935); 1 James Wm. Moore et al., Collier on Bankruptcy ¶ 0.04 (14th ed. 1974). Thus, any "right" to file bankruptcy is statutory, not constitutional.

Thomas G. Kelch and Michael K. Slattery, the Mythology of Waivers of Bankruptcy Privileges, 31 Ind. L.Rev. 897, 900 (1998)(Footnotes incorporated into quoted text.) See also United States v. Kras, 409 U.S. 434, 444-45 (1973)(The interest in filing bankruptcy does not rise to the same constitutional level as the ability to obtain a divorce; no fundamental interest is gained or lost depending on the availability of a discharge in bankruptcy.) Mr. Cook's claims do not rise to the constitutional level.

## STANDARDS APPLICABLE TO THIS MOTION

Mr. Cook's Motion is a Motion for Reconsideration of the entry of the Final Decree (doc 940) in his eight year old no asset chapter 7 case. The Tenth Circuit Court of Appeals has stated when a reconsideration motion is proper:

Case 04-17704-nlj7    Doc 949    Filed 11/06/12    Entered 11/06/12 14:06:10 Page 3 of 50

> [A] motion to reconsider filed within ten[4] days after
> entry of judgment is considered a Fed.R.Civ.P. 59(e)
> motion. <u>See</u> <u>Van Skiver [v. United States</u>], 952 F.2d
> [1241] at 1243 (10th Cir. 1991). Grounds warranting a
> motion to reconsider include (1) an intervening change
> in the controlling law, (2) new evidence previously
> unavailable, and (3) the need to correct clear error or
> prevent manifest injustice. <u>See Brumark Corp. v.</u>
> <u>Samson Resources Corp.</u>, 57 F.3d 941, 948 (10th Cir.
> 1995). Thus, a motion for reconsideration is
> appropriate where the court has misapprehended the
> facts, a party's position, or the controlling law. <u>Cf.</u>
> <u>Fed.R.App.P. 40(a)(2)</u>(grounds for rehearing). It is
> not appropriate to revisit issues already addressed or
> advance arguments that could have been raised in prior
> briefing. <u>See</u> <u>Van Skiver v. United States</u>, 952 F.2d
> 1241, 1243 (10th Cir. 1991).

<u>Servants of Paraclete v. Does</u>, 204 F.3d 1005, 1012 (10th Cir.

2000). "Rule 59(e) cannot be used to expand a judgment to

encompass new issues which could have been raised prior to

issuance of the judgment." <u>Steele v. Young</u>, 11 F.3d 1518, 1520

n.1 (10th Cir. 1993)(Citation omitted.) <u>Accord</u> <u>Fábrica de</u>

<u>Muebles J.J. Álvarez, Inc. v. Inversiones Mendoza, Inc.</u>, 682 F.3d

26, 31 (1st Cir. 2012):

> "The granting of a motion for reconsideration is 'an
> extraordinary remedy which should be used sparingly.' "
> <u>Palmer v. Champion Mortg.</u>, 465 F.3d 24, 30 (1st Cir.
> 2006) (quoting 11 Charles Alan Wright et al., Federal
> Practice and Procedure § 2810.1 (2d ed. 1995)). The
> moving party "must 'either clearly establish a manifest
> error of law or must present newly discovered
> evidence.'" <u>Marie v. Allied Home Mortg. Corp.</u>, 402 F.3d
> 1, 7 n.2 (1st Cir. 2005) (quoting <u>Pomerleau v. W.</u>
> <u>Springfield Pub. Sch.</u>, 362 F.3d 143, 146 n.2 (1st Cir.

---

[4]Fed.R.Bankr.P. 9023 adopts Fed.R.Civ.P. 59, which deals
with altering or amending judgments. Rule 59 formerly had a ten
day limit to request relief. This deadline was extended to 28
days in the 2009 amendments. <u>See</u> Advisory Committee Notes.

2004)).  A motion for reconsideration "does not provide
a vehicle for a party to undo its own procedural
failures, and it certainly does not allow a party to
introduce new evidence or advance arguments that could
and should have been presented to the district court
prior to the judgment." Aybar v. Crispin-Reyes, 118
F.3d 10, 16 (1st Cir. 1997) (quoting Moro v. Shell Oil
Co., 91 F.3d 872, 876 (7th Cir. 1996)) (internal
quotation marks omitted).

A reconsideration motion must present new evidence in

support of the motion, or point out "manifest errors."  Illinois

Central Gulf Railroad Company v. Tabor Grain Co., 488 F.Supp.

110, 122 (N.D. Ill. 1980).  Furthermore, a court will not find

"injustice" when a party could have easily avoided the outcome of

a case, but instead elected not to act until after a final order

has been entered.  Ciralsky v. Central Intelligence Agency, 355

F.3d 661, 673 (D.C. Cir. 2004).  As explained below, all Mr. Cook

had to do to avoid his current situation was to timely file a

simple objection to the Trustee's Rule 5009 certification.

The Court will deny Mr. Cook's Motion for Reconsideration.

As in Tabor Grain, Mr. Cook has not provided new evidence that

would have delayed closing the case nor has he pointed out any

manifest errors in the case closure.  Rather, as developed more

fully below, Cook's Motion appears to be

     no more than an expression of a view of the law
     contrary to that set forth in [all of this Court's and
     the Bankruptcy Appellate Panel's opinions].  Whatever
     may be the purpose of Rule 59(e) it should not be
     supposed that it is intended to give an unhappy
     litigant one additional chance to sway the judge.
     Since the plaintiff has brought up nothing new except

his displeasure this Court has no proper basis upon
which to alter or amend the order previously entered.
Similarly, the matters [Cook] raises by this motion
already have been fully litigated. This rehash of the
arguments previously presented affords no basis for a
revision of the Court's order.

<u>Tabor Grain</u>, 488 F.Supp. at 122.

## **CASE CLOSING**

Bankruptcy Code section 350 governs case closing and

reopening.  It states:

(a) After an estate is fully administered and the court
has discharged the trustee, the court shall close the
case.
(b) A case may be reopened in the court in which such
case was closed to administer assets, to accord relief
to the debtor, or for other cause.

Bankruptcy Rule 5009 provides procedures for case closing.

It states:

(a) Cases under chapters 7, 12, and 13.
     If in a chapter 7, chapter 12, or chapter 13 case
the trustee has filed a final report and final account
and has certified that the estate has been fully
administered, and if within 30 days no objection has
been filed by the United States trustee or a party in
interest, there shall be a <u>presumption</u> that the estate
has been fully administered.

(Emphasis added.)

Rule 5009 sets up a "default rule" that authorizes the Clerk

of the Bankruptcy Court to close a case when a thirty-day period

has run after the trustee files a no-asset report and no parties

in interest file an objection that would bring the case back to

the attention of the judge.  <u>In re Schoenewerk</u>, 304 B.R. 59, 63

(Bankr. E.D. N.Y. 2003).  This rule was designed to fit in with

Page -6-

the Bankruptcy Code enacted in 1978 which intended to relieve bankruptcy judges from the burden of case administration and tedious bureaucratic tasks such as entering closing orders in no asset cases. Id. at 62.

Rule 5009 serves a bureaucratic function, has nothing to do with the debtor and it grants a debtor no substantive rights or interests. Id. at 64. "Moreover, under Section 350 and Rule 5009, the final act of administration could very well be a purely ministerial act of which the debtor and other parties would receive no notice." Id. n.11. (Citing Korvettes v. Sanyo Electric (In re Korvettes), 42 B.R. 217, 221 (Bankr. S.D. N.Y. 1984), reversed on other grounds, In re Korvettes, 67 B.R. 730 (S.D. N.Y. 1986)).

Furthermore, bankruptcy courts do not keep cases open on the chance that a party might need the court's jurisdiction in the future. In re Johnson, 402 B.R. 851, 856 (Bankr. N.D. Ind. 2009) (Citing Fed.R.Bankr.P. 3022[5], Advisory Committee Note (1991)("The court should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future.")) See also In re Union Home and Industrial, Inc., 375 B.R. 912, 916-17 (10th Cir. BAP 2007)(Same). Nor are bankruptcy cases kept open in the event a debtor might wish to amend his or

---

[5]Fed.R.Bankr.P. 3022 serves the same function in Chapter 11 cases as Fed.R.Bankr.P. 5009 does in other chapter cases.

Case 04-17704-nlj7    Doc 949    Filed 11/06/12    Entered 11/06/12 14:06:10    Page 7 of 50

her schedules.  Fed.R.Bankr.P. 1009(a) ("A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed.")

Bankruptcy cases are not kept open to allow a debtor to file a motion to avoid a lien.  See In re Levy, 256 B.R. 563, 565 (Bankr. D. N.J. 2000)(Lien avoidance is recognized as a cause to reopen a case under section 350(b) because it affords relief to a debtor, and there are no time limits within which these motions must be filed.)  And, bankruptcy cases should be closed even if there are pending motions or adversary proceedings that do not relate to case administration.  In re Sindram, 2009 WL 361470 at *2 (Bankr. D. D.C. 2009)(contempt motion); Union Home, 375 B.R. at 918 (adversary proceeding).

In sum, closing of a bankruptcy case is an automatic, administrative act.  Osberg v. Bartels (In re Bartels), 449 B.R. 355, 357 (Bankr. W.D. Wisc. 2011).

On July 1, 2009 Philip J. Montoya, the Chapter 7 Trustee, filed a notice on the docket:

> Chapter 7 Trustee's Report of No Distribution: I, Philip J. Montoya, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. **Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered.**  I request that

> I be discharged from any further duties as trustee.
> Key information about this case as reported in
> schedules filed by the debtor(s) or otherwise found in
> the case record: This case was pending for 16 months.
> Assets Abandoned: $ 487085961.00, Assets Exempt: Not
> Available, Claims Scheduled: $ 9989980.00, Claims
> Asserted: Not Applicable, Claims scheduled to be
> discharged without payment: $ 9989980.00.  Filed by
> Trustee Philip J. Montoya.

(Emphasis added.)  Neither the United States Trustee or any party

in interest filed an objection within 30 days or, indeed, ever.

The final decree entered and the case closed on August 21, 2012.

After July 1, 2009 substantially nothing happened in the case.

Although over 100 more pleadings were filed, most were notices

that Mr. Cook or his various nemeses filed in a United States

District Court ("District Court") case that had earlier adopted

this Court's proposed findings of fact and conclusions of law and

abstained from hearing what was essentially an adversary

proceeding filed by Mr. Cook substantially identical to an action

("State Court Action") then and now pending in the Second

Judicial District Court, County of Bernalillo, State of New

Mexico ("State Court").[6]  For some unknown reason, that District

---

[6]Based on representations of the parties, this Court
believes that the adversary was filed because the handwriting was
already on the wall in the state court case that the state court
judge was inclined to rule against Mr. Cook's corporations.
Apparently Mr. Cook believed he could supercede the state and
perhaps find a more receptive judge in the bankruptcy court.
Later, when the United States District Court adopted this Court's
proposed findings of fact and conclusions of law and
recommendation to abstain, Mr. Cook removed the six year (or
perhaps eight year) old state case to the United States District
(continued...)

Case 04-17704-nlj7    Doc 949    Filed 11/06/12    Entered 11/06/12 14:06:10 Page 9 of 50

Court case remained open, which allowed Mr. Cook to refile what were essentially motions for sanctions, already denied by this Court, in an attempt to relitigate them in District Court. The District Court eventually held a status conference to determine what was going on and promptly referred all the pending motions back to the Bankruptcy Court, which not surprisingly denied them all for a second time. Then, after the filing of a motion to recuse Judge Starzynski, which was later withdrawn, and several motions to reconsider, which were denied, the case was closed. In sum, absolutely nothing of any value transpired from the date of the Report of No Distribution until the case was closed. Therefore, in retrospect the case was fully administered in July 2009 and was later properly closed.

Mr. Cook's arguments that there are now unadministered assets and that he cannot now void "possible" liens to preserve his fresh start lack merit. The easy issue to dispose of is his fresh start argument. This case was open for eight years. If Mr. Cook had a lien to avoid, he had ample time in which to do it. If he failed to do it, the solution is easy. He can file a motion to reopen the case to avoid a lien, pay the filing fee, and avoid the lien. Closing of the case has nothing to do with

---

[6](...continued)
Court on the eve of judgment. Suffice it to say the United States District Judge was not pleased with the transparent reason for the removal.

Case 04-17704-nlj7    Doc 949    Filed 11/06/12    Entered 11/06/12 14:06:10 Page 10 of 50

his ability to reopen the case or to avoid a lien.[7]  But, this
Court has previously noted that Mr. Cook has no liens he can
avoid.[8]  Therefore, there is no reason to keep the case open to
allow Mr. Cook to file a meritless motion to avoid a non-existent
lien.

Mr. Cook's argument of unadministered assets is not
credible.  His imaginary assets have two components.  One
component is his civil rights case against Judge Baca, Wells
Fargo, the Garretts and others pending in the Tenth Circuit Court
of Appeals.  The claim, that those persons violated Mr. Cook's
civil rights, arose post-petition and would not be estate
property.  The other component of his claimed damages are for
stay violations and "other causes."  This Court ruled four times
that there had been no stay violations.  Those orders were not
appealed.  This Court then ruled that the stay was annulled.

---

[7]However, his eight year delay may give any lien creditor a
credible defense of laches.  See, e.g., In re Bradley, 369 B.R.
147, 154 (Bankr. S.D. N.Y. 2007)("A recognized limitation on the
granting of motions to reopen for lien avoidance is the doctrine
of laches.... Laches is an equitable defense which allows a court
to dismiss an action when there exists inexcusable delay in
instituting an action and prejudice to the non-moving party as a
result of the delay.")(Citation omitted.)

[8]His schedules listed no nonpossessory, nonpurchase- money
security interests and no judicial liens.  See 11 U.S.C. §
522(f).  Any lien he gave was therefore voluntary and therefore
unavoidable.  To the extent Mr. Cook claims that any lien was
unenforceable, this issue was or should have been necessarily
decided in the State Court Action.  This Court would be bound by
that decision.

That order was not appealed.  The Court ruled that Mr. Cook and

his companies lacked standing to pursue stay violations against

estate property.  That order was appealed and affirmed.  It has

been appealed again to the Tenth Circuit and remains pending

there.  Until that order is reversed, Mr. Cook has no standing.

Mr. Cook next argues that when the case closed, all of the

unpursued actions were abandoned to him.  This Court has ruled

that unscheduled assets are not abandoned at the end of the case[9].

---

[9]This Court is not alone in so ruling.  See Jeffrey v.
Desmond (In re Jeffrey), 70 F.3d 183, 186 (1st Cir. 1995)(Trustee
had actual knowledge of debtor's state court case.  Court ruled:
        Despite appellants' persistent claims, we agree with
        the district court that the alleged discussion with the
        Trustee, even if true, has no bearing on the outcome of
        this appeal.  The law is abundantly clear that the
        burden is on the debtors to list the asset and/or amend
        their schedules, and that in order for property to be
        abandoned by operation of law pursuant to 11 U.S.C. §
        554(c), the debtor must formally schedule the property
        pursuant to 11 U.S.C. § 521(1) before the close of the
        case.  See, e.g., In re Rothwell, 159 B.R. 374, 377
        (Bankr. D. Mass. 1993).  Furthermore, by operation of
        11 U.S.C. § 554(c) and (d), any asset not properly
        scheduled remains property of the bankrupt estate, and
        the debtor loses all rights to enforce it in his own
        name.  Vreugdenhill v. Navistar Int'l Transportation
        Corp., 950 F.2d 524, 526 (8th Cir. 1991) (Chapter 7
        debtor who failed to schedule potential claim cannot
        prosecute the claim after emerging from bankruptcy).
(Footnote incorporated into quoted text.);  Vreugdenhill v.
Navistar Int'l Transportation Corp., 950 F.2d 524, 526 (8th Cir.
1991)(Even if trustee knows of claim, if trustee does not pursue
it it is not abandoned at end of case unless it was scheduled.);
Ultimore, Inc. v. Bucula (In re Bucula), 464 B.R. 626, 634
(Bankr. S.D. N.Y. 2012)(If trustee does not pursue an avoidance
action the debtors may not pursue it after the case as abandoned
property and, unless all creditors were paid in full, the debtors
would not have any standing to pursue the action because they
                                              (continued...)

⁹(...continued)
could receive no benefit.); <u>Vang Chanthavong v. Aurora Loan Services, Inc. (In re Vang Chanthavong)</u>, 448 B.R. 789, 797–98 (E.D. Cal. 2011)(A debtor has no duty to schedule a cause of action that accrues post-petition.  Any claim that arises post-petition that is not scheduled or administered by the trustee is not abandoned upon closing under sections 554(a),(d).); <u>In re DeLash</u>, 260 B.R. 4, 9 (Bankr. E.D. Cal. 2000):

> [W]hile the case is open, the court may order the abandonment of any property of the estate on the motion of the trustee or any party in interest. 11 U.S.C. § 554(a) & (b).  Subsections (a) and (b) use the broadest possible term, "property of the estate," when describing the property the court may order the trustee to abandon.  This term, as defined by section 541, includes not just a debtor's pre-petition and scheduled assets, but also includes any property recovered by a trustee pursuant to section 550, such as a preference judgment.

> This is in contrast to the language of section 554(c) which uses the more restrictive term, "any property scheduled under section 521(1)."  Thus, when there is no court order pursuant to section 554(a) or section 554(b), unadministered property is abandoned by operation of law only if it was scheduled under section 521(1).  **If the debtor is not required by section 521(1) to schedule property, that property will not be abandoned by operation of law.**

> The phraseology of section 554(c) means that there are three categories of unadministered assets that are not abandoned by operation of law.  First, as permitted in the preamble of section 554(c), the court may expressly order that a scheduled asset will not be abandoned when the case is closed.  This permits a trustee to close the case yet preserve for the estate an asset with possible future value even though it has no immediately realizable value. <u>In re Hart</u>, 76 B.R. 774 (Bankr. C.D. Cal. 1987).

> Second, if the debtor has failed to schedule an asset, the closing of the case will not result in its abandonment.  When an asset is omitted from the schedules, it cannot be presumed that the trustee knew of the asset and meant to abandon it by closing the case.  <u>See e.g.</u>, <u>Havelock v. Taxel (In re Pace)</u>, 159 B.R. 890, 898–99 (9th Cir. BAP 1993), <u>reversed in part</u>,

(continued...)

Page  -13-

Therefore, even if the Tenth Circuit were to find actions the estate could have brought, it would not be Mr. Cook that would pursue them.   The Tenth Circuit Court of Appeals knows how to remand a case, the Bankruptcy Court knows how to reopen a case, and the United States Trustee knows how to appoint a trustee if further administration is needed.   It is neither Mr. Cook's duty or right to hold the case open on the unlikely chance that lightning strikes the Byron White United States Courthouse in Denver, Colorado, causing the Tenth Circuit Court of Appeals to suddenly ignore well established principles of federal constitutional law.   In any event, Mr. Cook has no rights under the Bankruptcy Code to collect any assets from anyone or pay any funds to anyone.

In summary, as Movant, Mr. Cook had the burden of proof to overcome the presumption that the estate was fully administered. He has failed.   All Mr. Cook has demonstrated is a desperate hope that the Tenth Circuit will reverse this Court's and the

---

[9](...continued)
67 F.3d 187 (9th Cir. 1995); <u>In re Arista Devices Corp.</u>, 94 B.R. 26 (E.D. N.Y. 1988).  Such an asset is neither abandoned nor administered and remains property of the estate despite the closing of the case. 11 U.S.C. § 554(d).
        Third, if the property of the estate in question is not of the type the debtor is required to schedule, it is not abandoned by operation of law when the case is closed.
(Emphasis added.)

Bankruptcy Appellate Panel's opinions that he lacked standing to challenge actions as being in violation of the automatic stay as to estate property.

## CASE REOPENING

Bankruptcy Rule 5010 provides procedures for reopening cases. It states:

> A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code. In a chapter 7, 12, or 13 case a trustee shall not be appointed by the United States trustee unless the court determines that a trustee is necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case.

And, like the closing of a case, reopening is also an automatic, administrative act. <u>Bartels</u>, 449 B.R. at 357. Reopening is allowed only for reasons specified in the statute. <u>Id.</u> <u>See also</u> <u>Finch v. Coop (In re Finch)</u>, 378 B.R. 241, 246 (8th Cir. BAP 2007), <u>aff'd</u>, 285 Fed.Appx. 326 (8th Cir. 2008):

> Reopening is supposed to be little more than an administrative function which is designed to resurrect closed files from the court's archives so that some type of request for relief can be received and acted upon. This is usually done in order to take care of some detail that was overlooked or left unfinished at the time the case was closed. It was not designed as an opportunity to create, and then enforce, rights that did not exist at the time the case was originally closed. <u>In re Bartlett</u>, 326 B.R. 436, 438 (Bankr. N.D. Ind. 2005).

and <u>First National Bank of Jeffersonville v. Goetz (In re Goetz)</u>, 2009 WL 1148580 (Bankr. S.D. Tex. 2009) at *2.

> The reopening of a case is a ministerial act that has no substantive effect in itself. Reopening of a

> case merely provides an opportunity to request
> substantive relief.  See Cusano v. Klein, 264 F.3d 936
> (9th Cir. 2001).  Reopening of a case is within the
> sound discretion of the court, and a case will only be
> reopened upon the demonstration of compelling
> circumstances justifying the reopening. ... The burden
> of proof to demonstrate circumstances that are
> sufficiently compelling to justify reopening a case is
> on the movant.  See In re Winburn, 196 B.R. 894, 897
> (Bankr. N.D. Fla. 1996); In re Nelson, 100 B.R. 905,
> 906 (Bankr. N.D. Ohio 1989).
>      If substantive relief can not be granted in the
> reopened case, then there is no reason to grant a
> motion to reopen.  Further, if reopening a case would
> be futile and a waste of judicial resources or would
> serve no purpose, then cause to reopen does not exist.
> See In re Carberry, 186 B.R. 401 (Bankr. E.D. Va.
> 1995); In re Kinion, 207 F.3d 751 (5th Cir. 2000).

and In re Wade, 991 F.2d 402, 409 (7th Cir.), cert. denied, 510

U.S. 870 (1993)(If there are no assets requiring administration

and the debtor seeks no other relief, there is no cause to

reopen.)

On the other hand, the bankruptcy court has a duty to reopen

a case whenever there is prima facie proof that the case has not

been fully administered.  Mullendore v. United States (In re

Mullendore), 741 F.2d 306, 308 (10th Cir. 1984).  The motion to

reopen, however, must be presented by one who has standing to

seek the reopening.  Id.  ("Application to have the estate

reopened may be made by an 'interested party' who would be

benefited [sic] by the reopening.")

**STANDING**

Federal courts' jurisdiction is strictly limited by Article

III, § 2, of the Constitution to "Cases" and "Controversies."

Page  -16-

<u>Steel Company v. Citizens for a Better Environment</u>, 523 U.S. 83, 102 (1998). The Supreme Court describes cases and controversies as those matters amenable to and resolvable by the judicial process. <u>Id.</u> (citing <u>Muskrat v. United States</u>, 219 U.S. 346, 356-57 (1911)). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." <u>Id.</u> (citing <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155 (1990)).

Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized, <u>see</u> <u>[Allen v. Wright</u>, 468 U.S. 737 (1984)], at 756, 104 S.Ct., at 3327; <u>Warth v. Seldin</u>, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); <u>Sierra Club v. Morton</u>, 405 U.S. 727, 740-741, n. 16, 92 S.Ct. 1361, 1368-1369, n. 16, 31 L.Ed.2d 636 (1972);[n1] and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " <u>Whitmore [v. Arkansas</u>, 495 U.S. 149 (1990)], at 155, 110 S.Ct., at 1723 (quoting <u>Los Angeles v. Lyons</u>, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)). Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." <u>Simon v. Eastern Ky. Welfare Rights Organization</u>, 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." <u>Id.</u>, at 38, 43, 96 S.Ct., at 1924, 1926.

[n1] By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).

"This triad of injury in fact, causation, and redressability—

constitutes the core of Article III's case or controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." Steel Company, 523 U.S. at 103-04 (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990)(Footnote omitted.) See also Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982):

> [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979), and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976).[N9] In this manner does Art. III limit the federal judicial power "to those disputes which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process." Flast v. Cohen, 392 U.S. [83 (1968)], at 97, 88 S.Ct., at 1951.

[N9] See Watt v. Energy Action Educational Foundation, 454 U.S. 151, 161, 102 S.Ct. 205, 212, 70 L.Ed.2d 309 (1981); Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978); Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 261, 262, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977); Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 218, 220-221, 94 S.Ct. 2925, 2930, 2931-2932, 41 L.Ed.2d 706 (1974); United States v. Richardson, 418 U.S. 166, 179-180, 94 S.Ct. 2940, 2947-2948, 41 L.Ed.2d 678 (1974); O'Shea v. Littleton, 414 U.S. 488, 493, 94 S.Ct. 669, 674, 38 L.Ed.2d 674 (1974); Linda R.S. v. Richard D., 410 U.S. 614,

Case 04-17704-nlj7    Doc 949    Filed 11/06/12    Entered 11/06/12 14:06:10 Page 18 of 50

617–618, 93 S.Ct. 1146, 1148–1149, 35 L.Ed.2d 536
(1973).

The Valley Forge case emphasizes that the plaintiff must

have an "actual injury redressable by the court." Id.

It tends to assure that the legal questions presented
to the court will be resolved, not in the rarified
atmosphere of a debating society, but in a concrete
factual context conducive to a realistic appreciation
of the consequences of judicial action. The "standing"
requirement serves other purposes. Because it assures
an actual factual setting in which the litigant asserts
a claim of injury in fact, a court may decide the case
with some confidence that its decision will not pave
the way for lawsuits which have some, but not all, of
the facts of the case actually decided by the court.
        The Art. III aspect of standing also reflects a
due regard for the autonomy of those persons likely to
be most directly affected by a judicial order. The
federal courts have abjured appeals to their authority
which would convert the judicial process into "no more
than a vehicle for the vindication of the value
interests of concerned bystanders." United States v.
SCRAP, 412 U.S. 669, 687, 93 S.Ct. 2405, 2416, 37
L.Ed.2d 254 (1973). Were the federal courts merely
publicly funded forums for the ventilation of public
grievances or the refinement of jurisprudential
understanding, the concept of "standing" would be quite
unnecessary. But the "cases and controversies"
language of Art. III forecloses the conversion of
courts of the United States into judicial versions of
college debating forums. As we said in Sierra Club v.
Morton, 405 U.S. 727, 740, 92 S.Ct. 1361, 1368, 31
L.Ed.2d 636 (1972):
        The requirement that a party seeking review must
        allege facts showing that he is himself adversely
        affected ... does serve as at least a rough
        attempt to put the decision as to whether review
        will be sought in the hands of those who have a
        direct stake in the outcome.
        The exercise of judicial power, which can so
profoundly affect the lives, liberty, and property of
those to whom it extends, is therefore restricted to
litigants who can show "injury in fact" resulting from
the action which they seek to have the court
adjudicate.

Case 04-17704-nlj7    Doc 949    Filed 11/06/12    Entered 11/06/12 14:06:10 Page 19 of 50

<u>Id.</u> at 472-73.

Congress can pass statutes that grant certain rights to persons, <u>e.g.,</u> 11 U.S.C. § 350(b) (empowering a bankruptcy court to reopen cases in certain circumstances). But Congress may not "abrogate the Art. III minima." <u>Gladstone Realtors v. Village of Bellwood</u>, 441 U.S. 91, 100 (1979). Even a plaintiff that relies on a statute must always have suffered a distinct and palpable injury to himself that is likely to be redressed if the requested relief is granted. <u>Id.</u> (citations omitted.) <u>See also</u> <u>Raines v. Byrd</u>, 521 U.S. 811, 820 n.3 (1997)("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.")(Citation omitted.); <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975)("Moreover, Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules. Of course, Art. III' s requirement remains: the plaintiff still must allege a distinct and palpable injury to himself[.]"); <u>O'Shea v. Littleton</u>, 414 U.S. 488, 493 n.2 (1974):

> We have previously noted that 'Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute. <u>See, e.g.</u>, <u>Trafficante v. Metropolitan Life Ins. Co.</u>, 409 U.S. 205, 212, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (White, J., concurring); <u>Hardin v. Kentucky Utilities Co.</u>, 390 U.S. 1, 6, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968).' <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). ... Perforce, the constitutional requirement of an actual case or controversy remains. Respondents still must show actual

or threatened injury of some kind to establish standing in the constitutional sense.

There is no question that the limits imposed by Article III on federal jurisdiction apply equally in bankruptcy. <u>Illinois Investment Trust No. 92-7163 v. Allied Waste Industries, Inc. (In re Resource Technology Corp.)</u>, 624 F.3d 376, 382 (7th Cir. 2010); <u>In re Saffold</u>, 373 B.R. 39, 44 (Bankr. N.D. Ohio 2007). And, finally, the Bankruptcy Court has a duty to raise jurisdiction <u>sua sponte</u> before reaching the merits of a case. <u>GAF Holdings, LLC v. Rinaldi (In re Farmland Industries, Inc.)</u>, 639 F.3d 402, 405 (8th Cir. 2011); <u>Day v. Klinger (In re Klinger)</u>, 301 B.R. 519, 523 n.5 (Bankr. N.D. Ill. 2003); <u>see</u> F.R.B.P. 7012, incorporating F.R.Civ.P. 12(h)(3).

**FINDINGS OF FACT**

Fed.R.Bankr.P. 7008 incorporates Fed.R.Civ.P. 8. This latter rule provides, in part:

**Rule 8. General Rules of Pleading**

**(a) Claim for Relief.** A pleading that states a claim for relief must contain:
(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

The Motion's Statement of Relevant Facts states: "As cumbersome as it may be, Debtor respectfully request [sic] the

Court review all the facts and arguments set forth in the attached Exhibits 1 & 2. Fully incorporated herein by reference, are attached Exhibits 1 & 2, in support of this Motion." Motion, doc 941, p.2. Exhibits 1 and 2 are the eighty-six page brief Mr. Cook filed in the Tenth Circuit Court of Appeals purporting to appeal nine rulings (but, in actuality listing fourteen different matters) made by this Court over the long history of this case.

The Court declines to read the brief as a statement of facts. First, the brief does not comply with Rule 8. It is not a "short and plain statement" and is not "simple, concise and direct." The brief is repetitive, tedious, redundant, rambling and excessively lengthy. See, e.g., Pominansky v. Jarj Const. Corp., 2007 WL 2900275 (S.D. Fla. 2007)(Court dismisses "shotgun" type pleading for failure to comply with Rule 8). It is a "bloated mass of unnecessary detail." Ciralsky, 355 F.3d at 669. It contains little more than demands, charges of conspiracies and unfounded tangled legal conclusions.

> [T]he courts have unhesitatingly dismissed actions where the complaint: consisted of "a labyrinthian prolixity of unrelated and vituperative charges that def(y) comprehension . . .", Prezzi v. Schelter, 469 F.2d 691, 692 (2d Cir. 1972), cert. denied, 411 U.S. 935, 93 S.Ct. 1911, 36 L.Ed.2d 396 (1973); was ". . . confusing, ambiguous, redundant, vague and, in some respects, unintelligible . .", Wallach v. City of Pagedale, Missouri, supra, 359 F.2d [57] at 58 [(8th Cir. 1968)]; was ". . . so verbose, confused and redundant that its true substance, if any, is well disguised . . .", Corcoran v. Yorty, 347 F.2d 222, 223 (9th Cir.), cert. denied, 382 U.S. 966, 86 S.Ct. 458, 15 L.Ed.2d 370 (1965); contained ". . . a completely

Page -22-

> unintelligible statement of argumentative fact . . .", <u>Koll v. Wayzata State Bank</u>, <u>supra</u>, 397 F.2d [124] at 125 [(8th Cir. 1968)] with ". . . little more than demands, charges, and conclusions . . .", <u>Burton v. Peartree</u>, 326 F.Supp. 755, 758 (E.D. Pa. 1971); represented ". . . circuitous diatribes far removed from the heart of the claim . . .", <u>Prezzi v. Berzak</u>, <u>supra</u>, 57 F.R.D. [149] at 151 [(S.D. N.Y. 1972)]; or set forth ". . . a meandering, disorganized, prolix narrative . . . ." <u>Karlinsky v. New York Racing Association, Inc.</u>, 310 F.Supp. 937, 939 (S.D. N.Y. 1970).

<u>Brown v. Califano</u>, 75 F.R.D. 497, 499 (D. D.C. 1977). Mr. Cook's exhibits to the Motion fit these descriptions. For all these reasons they will not be considered.

Second, arguments made to the appellate court are not facts. To the extent the arguments contain facts, most likely they are facts that this Court has rejected, causing the appeal in the first place. Finally, it is not the duty of the trial court to search through voluminous filings in an attempt to locate facts that might support Cook's theory that the case was improperly closed. <u>Siosin v. Knights of Columbus</u>, 303 F.3d 458, 460 (2nd Cir. 2002).

In addition to the "facts" contained in the brief, Mr. Cook lists another twenty-four paragraphs of largely irrelevant "facts." An Errata (doc 944) then amends the twenty-four paragraphs by inserting and deleting words, phrases, sentences, and adding and deleting entire legal theories. The resulting pastiche of "facts" are briefly summarized as follows:

As to fact 1, Mr. Cook believes the estate is not fully administered for the benefit of creditors and Debtor, notwithstanding the trustee's "abandonment[10] or attempted abandonment" of all assets on July 1, 2009 (doc 844) and by the Court's closing[11] the case on August 21, 2012.

As to fact 2, Mr. Cook asserts that the Notice of Abandonment (doc 844) filed by Trustee Montoya resulted in commitments by the Debtors and the corporate entities not to pursue causes of action against Montoya and the former Chapter 11 Trustee Linda Bloom. Even if this were true, it is not relevant to whether the case was properly closed. It is also not relevant to whether there are assets still to be administered. It may show that Mr. Cook believes there are assets in the form of claims against the previous trustees or claims that the trustees should perhaps have pursued. In fact, however, neither trustee pursued any claims against anyone, there are no indications that either trustee believed there were claims against anyone, and

---

[10]This Court has issued a series of opinions in this case that clearly state that the Trustee's no asset report and Notice of Abandonment (doc 844), both entered on July 1, 2009 accomplished nothing and most definitely did not abandon assets. The Bankruptcy Appellate Panel has affirmed. This Court has also ruled in this case that there is no "attempted abandonment" and that assets may be abandoned only as stated in the statute. Either Mr. Cook has not read this Court's opinions or simply chooses to ignore them.

[11]As discussed above, unscheduled assets (if any) are not abandoned when a case closes, but remain in the estate.

even if there were, the Court defers to a trustee's sound business judgment in deciding whether to administer assets.  See Frostbaum v. Ochs (In re Samuel), 277 B.R. 470, 475-76 (E.D. N.Y. 2002):

> As the hearing transcript demonstrates, Judge Craig relied on the business judgment rule in granting the Trustee's application for a final distribution and accounting, despite the Trustee's failure to collect further funds to settle Frostbaum's subordinated claim. As with a decision to reject an executory contract, or to abandon burdensome property, it was appropriate to rely on the Trustee's business judgment in abandoning collection of this claim.  The Trustee's decision that further attempts to collect assets from the Debtor would be fruitless and only result in greater expense in administering the estate was well within the scope of decisions left to the Trustee's business judgment. So long as this decision was not made arbitrarily, or in bad faith, it was appropriate for the Bankruptcy Court to accept this decision for the benefit of the estate and to grant the Trustee's final application. See In re Curlew Valley Assocs., 14 B.R. 506 (Bankr. D. Utah 1981)("In short the court will not entertain objections to a trustee's conduct of the estate where that conduct involves a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code."); see also In re Fulton, 162 B.R. 539, 540 (Bankr. W.D. Mo. 1993) (citing Curlew with approval and holding it appropriate for Trustee to close the estate and to abandon any causes of action for which recovery was highly unlikely); cf. In re Lyon & Reboli, Inc., 24 B.R. 152, 154-55 (Bankr. E.D. N.Y. 1982)(quoting rationale of Curlew but distinguishing case at issue).

The Court further notes that there were no funds in the estate to pursue litigation (doc 848, Trustee's report shows no funds collected and none expected) and no proof offered that any attorney would have undertaken such speculative complex commercial litigation on a contingency fee basis.  Collection

costs often factor heavily in a trustee's business judgment.  Id. at 475.

Cook's facts 3-7 refer to two cases pending in the Tenth Circuit Court of Appeals[12].  Fact 3 specifically deals with Appeal 12-2023, Cook v. Hon. Theodore C. Baca, et. al.  This lawsuit was filed by Mr. Cook post-petition[13], post-conversion[14]

---

[12] It is absolutely clear that once an appeal is filed, the trial court loses jurisdiction of the matter appealed. Therefore, to the extent Mr. Cook is asking for yet another reconsideration of everything on appeal, the Court cannot grant any relief.  See Garcia v. Burlington Northern Railroad Co. 818 F.2d 713, 721 (10th Cir. 1987):

> Filing a timely notice of appeal pursuant to Fed.R.App.P. 3 transfers the matter from the district court to the court of appeals. Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam); Gryar v. Odeco Drilling, Inc., 674 F.2d 373, 375 (5th Cir. 1982). The district court is thus divested of jurisdiction.  Any subsequent action by it is null and void.  Offshore Logistics Servs., Inc. v. Mutual Marine Office, Inc., 639 F.2d 1168, 1170 (5th Cir. Unit A Mar. 1981); Taylor v. Wood, 458 F.2d 15, 16 (9th Cir. 1972).

See also Bialac v. Harsh Investment Corp. (In re Bialac), 694 F.2d 625, 627 (9th Cir. 1992):

> The pending appeal divested the lower court of jurisdiction to proceed further in the matter.  See In re Thorp, 655 F.2d 997 (9th Cir. 1981) (per curiam); Petrol Stops Northwest v. Continental Oil Co., 647 F.2d 1005, 1010 (9th Cir. 1981).  Even though a bankruptcy court has wide latitude to reconsider and vacate its own prior decisions, not even a bankruptcy court may vacate or modify an order while on appeal.  In re Combined Metals Reduction Co., 557 F.2d 179, 200-01 (9th Cir. 1977)(Footnote omitted.)

[13] Cook's Chapter 11 was filed on October 21, 2004.

[14] The case converted to Chapter 7 on March 20, 2008.

in the United States District Court, District of New Mexico. Mr.

Cook describes the case as follows:

> This is an action for damages and equitable relief
> based on the discrimination of and denial of Plaintiffs
> federally protected equal civil rights, as well as for
> damages and equitable relief based on **post bankruptcy
> petition**: contract breach, breach of duty of good faith
> and fair dealing, fraud, negligent misrepresentation,
> fraud in the inducement, intentional interference with
> contract, malicious abuse of process, civil conspiracy,
> intentional inflection [sic] of emotional distress,
> slander of title, violations of unfair practices act
> and prima facie tort.

Cook v. Baca, 10-cv-1173-JAP-KBM (D. N.M. filed Dec. 9, 2010),

doc 1, p.1. (Emphasis added.) Cook's fact 3 claims that this

civil rights case is "arising in a Title 11" and should be

administered in the Bankruptcy Court to accord the Debtor and

other creditors relief. This "fact" is not a fact at all;

rather, it is a legal conclusion, and an incorrect one at that.

Matters "arise in" a bankruptcy if they concern the

administration of the bankruptcy case and have no existence

outside of the bankruptcy. Wood v. Wood (In re Wood), 825 F.2d

90, 97 (5th Cir. 1987); Personette v. Kennedy (In re Midgard

Corp.), 204 B.R. 764, 771 (10th Cir. BAP 1997). Civil rights

actions accruing post-petition to a chapter 7 debtor have nothing

to do with administration of the bankruptcy case and certainly

have an existence outside of the bankruptcy court. Therefore,

they cannot "arise in" bankruptcy. Furthermore, with rare

exceptions not applicable here, property acquired by a chapter 7

debtor after the petition is not property of the estate at all and the bankruptcy has no control or jurisdiction over it. <u>Sender v. Buchanan (In re Hedged-Investments Assoc., Inc.)</u>, 84 F.3d 1281, 1285 (10th Cir. 1996):

> We emphasize § 541(a)(1) limits estate property to the debtor's interests "as of the commencement of the case." This phrase places both temporal and qualitative limitations on the reach of the bankruptcy estate. In a temporal sense, it establishes a clear-cut date after which property acquired by the debtor will normally not become property of the bankruptcy estate. <u>See generally</u> 4 Collier on Bankruptcy ¶ 541.05. In a qualitative sense, the phrase establishes the estate's rights as no stronger than they were when actually held by the debtor. <u>Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 885 F.2d 1149, 1154 n.7 (3d Cir. 1989).

In fact 7, Mr. Cook also cites <u>In re Johnson</u>, 575 F.3d 1079, 1082-83 (10th Cir. 2009) for the "well established" proposition that once the trustee is discharged a debtor has standing pursuant to § 362(k) to pursue stay violations. In fact, <u>Johnson</u> stands for the proposition that once a debtor establishes his or her own automatic stay damages[15], a dismissal of the underlying bankruptcy does not deprive the court of jurisdiction to award those damages[16]. If Mr. Cook could establish that he personally

---

[15]"[T]he bankruptcy court determined that M & M had violated the automatic stay by repossessing the Johnsons' pickup truck while their bankruptcy case was pending. The bankruptcy court awarded the Johnsons $937.50 for loss of use of the vehicle, $5,028.50 in attorney fees, and $232.23 for costs, a total of $6,198.23." <u>Johnson</u>, 575 F.3d at 1081 (Citations omitted.)

[16]The <u>Johnson</u> case never uses the word "standing" in the
(continued...)

sustained damages (as opposed to his corporations) from actions taken by Wells Fargo, the Garretts and others then he would have the same standing the Johnsons had. But, his claims were that corporate property and estate property were damaged. For this he has no standing.

Cook's fact 8 is that the Chapter 7 trustee and his previous counsel and he himself had taken the position that all remaining assets were abandoned on July 1, 2009. It is not material or relevant that the trustee, his counsel and Mr. Cook had taken an incorrect position as a matter of law. Mr. Cook urges the Court to join his position to moot out the relief he is requesting in the Tenth Circuit. This Court cannot. <u>See</u> note 12, above (trial court loses jurisdiction when appeal taken).

Cook's fact 9 is convoluted and dense. The Court believes that Mr. Cook is stating that: 1) The chapter 11 trustee made an argument that certain unscheduled assets purportedly owned by some of Cook's corporations should be declared to be estate

---

[16](...continued)
entire opinion. While the bankruptcy court did find damages, which is a crucial element of standing, standing was simply not an issue in the case. <u>See also</u> Thomas J. Salerno, Craig D. Hansen, G. Christopher Meyer, Sheil M. Williams and George M. Basharis, Advanced Chapter 11 Bankruptcy Practice, § 3.8 (Bankruptcy Court Subject Matter Jurisdiction under BAFJA), 113 n.12 (Citing <u>Johnson</u> only for its affirmance of the BAP's determination that the bankruptcy court retained jurisdiction over a Section 362(k)(1) matter for willful violation of the automatic stay after the court dismissed the underlying bankruptcy case) (citing 28 U.S.C. §§ 1334(b) and 157(b)(1)).

property.  She arrived at this argument through a plausible reading of the transfer documents and the non-occurence of a subsequent event[17]; if the trustee could obtain this property, she could sell it.  2) Because the trustee made this claim to those assets, Cook argues that the corporations were damaged (in an unspecified way), so the automatic stay should be reinstated[18] until the disputed ownership of those assets is determined and the Court computes damages due to the Cook corporations. 3) Because those assets were subject to unfavorable orders entered in the State Court Action, this Court should declare those orders void as violative of the automatic stay.  4) All of this relief would be a core proceeding.

Mr. Cook ignores or forgets the fact that these assets were the subject of an adversary proceeding (Adv. No. 07-1038-S) in which a Memorandum Opinion (doc 33) made certain findings: a) that the purchaser had in fact satisfied the maintenance requirements, b) the trustee's attempt to exercise the reversion had no effect, c) the transferred assets never belonged to the Cooks and never became estate property.  Furthermore, the Court finds that simply because a trustee makes an attempt to obtain

---

[17]The transfer document transferred assets subject to a possibility of reverter in the event that the transferee could not maintain the transferred assets.

[18] A proceeding to reinstate an automatic stay must be an adversary proceeding.  In re Bryant, 256 B.R. 516, 520 (Bankr. D. Colo. 2003).

Case 04-17704-nlj7   Doc 949   Filed 11/06/12   Entered 11/06/12 14:06:10 Page 30 of 50

assets with a good faith belief the estate is entitled to them does not, ipse dixit, give them the protection of the automatic stay. In fact, the assets were not and never were estate property and therefore never protected by the automatic stay. And, since the property never belonged to the Debtors (or their estate), any damage to the assets that happened in the State Court Action was inflicted on Cook's corporations, not him individually. Simply stated, this is another attempt by Mr. Cook to assert the rights of others not before the Court. This is a state court dispute and it is not a core, or even related to, proceeding.

Cook's fact 10 states that the State Court did not allow him to address the Bank's security interest in the property he claimed exempt. This is not a bankruptcy issue; if Mr. Cook has a problem with the State Court's judgment, he should appeal it to the state appellate courts. He further states that this Court did not allow him to seek to void an "alleged collateral interest" of the Bank, but lifted the stay. It is true the Court lifted the stay (and annulled it), but there was no adversary proceeding that sought to determine lien positions of the bank in exempt property. However, as noted above, if Mr. Cook believes he can avoid a lien, he can file a motion to reopen the case, pay the fee, and file a motion.

Mr. Cook's fact 11 states that the case needs to remain open so that the pending dischargeability adversary proceeding can be administered.  This is not true.  Dischargeability of a debt has nothing to do with case administration.  See In re Banks-Davis, 148 B.R. 810, 812-13 (Bankr. E.D. Va. 1992)(Courts retain jurisdiction over matters "arising in" a bankruptcy case, such as dischargeability, after the case is closed.)

Mr. Cook withdrew facts 12 through 14.  Mr. Cook's fact 15 is that if the United States District Court's decision is affirmed [sic][19] the matters would be brought to this Court to administer.  This is incorrect; it would be remanded to the United States District Court.  This civil rights case was not part of the bankruptcy estate.

Facts 15 through 18 are redundant of matters already discussed.  Fact 19 states that the Cooks owe nondischargeable taxes and the proceeds from the stay violations should be used to pay those taxes[20].  This argument is redundant of whether Cook has standing to pursue estate actions, pending in the Tenth Circuit and not addressable in this Court at this time.  Facts 22 through 24 are redundant requests for relief, but add that Mr.

_____

[19]The District Court dismissed the civil rights case.

[20]The Court believes that this is the first mention of taxes.  If taxes are owed this fact was known before the case closed so it is not "new evidence" that would justify Rule 59 relief.

Cook's opinion of the value of his damages claims for stay violations is $5.5 billion. Mr. Cook forgets that the stay was annulled and the property allegedly harmed was not estate property.

In summary, none of Mr. Cook's "facts" provide new evidence that would have delayed closing the case nor pointed out any manifest errors in the case closure. The Motion to Reconsider should be denied.

## FINDINGS BY THE COURT

The Court finds the following facts established by the record are the only ones relevant to this Motion.

1) On September 6, 2006, Debtor was represented by bankruptcy counsel. On that date his attorney filed a Motion to Dismiss the bankruptcy case after the August 16, 2006 appointment of the Chapter 11 Trustee. A portion of that motion alleges:

> 8. The only assets that may have value are the intellectual property rights, which are burdened with conflicting claims of ownership and assertions of liens. Those rights can most efficiently and effectively be determined in the pending state court litigation [i.e., the State Court Action].
> 9. Under all the circumstances of this case, the best interests of the creditors and the estate would be served by dismissing the Chapter 11 proceeding to avoid further administrative expenses. There are no assets available for liquidation by the trustee which are not already the subject of the state court litigation.

Doc 389.

2) On August 13, 2009, Mr. Cook (who by then was self-represented) filed a Motion to Withdraw the Reference to the

Page -33-

Bankruptcy Court in Adv. No. 04-1246-S, <u>Cook v. Eastern Savings</u>

<u>Bank, FSB</u>.  The District Court assigned the motion a case number

of CIV-09-803-JCH-CG.  This motion alleges, among other things:

> 16. The Cooks bankruptcy case appears as though it
> could be dismissed but for this pending case and one
> more adversary, Adv. 08-01074[21]; the Bankruptcy Court
> has under advisement a pending motion to dismiss Adv.
> 08-01074, and if dismissed, it appears this case could
> be dismissed in the near future.
> ...
> 19. The [sic] is nothing more for the Bankruptcy Court
> to administer as all assets of the estate including
> this Adversary have been abandoned on July 1, 2009. <u>See</u>
> <u>In re Hill</u>, 195 B.R. 147, 151 (Bankr. D. N.M. 1996)
> (citing <u>In re Sutton</u> 10 B.R 737 (Bankr. E.D. Va.
> 1981)).

3)  On April 19, 2010, District Judge Judith Herrera entered a

Memorandum Opinion and Order Granting the Motion to Withdraw the

Reference.  One stated reason for granting the Motion was "In

addition, withdrawing the matter will not affect the bankruptcy

process as there are no bankruptcy-related issues remaining."[22]

---

[21]Adversary case 08-1074 is a complaint to determine
dischargeability of debt filed by the Garretts and is still
languishing today in the final stages of discovery.


[22]Facts 1, 2 and 3 demonstrate that Mr. Cook's valuation
estimates vary tremendously with the relief requested.  In facts
1 and 2 he represents that it is doubtful that anything is worth
anything.  This representation was in fact accepted by the
District Court in withdrawing the reference.  Now that he wishes
to keep his no asset case open, suddenly the estate is worth $5.5
billion.  This screams judicial estoppel. <u>See</u> <u>Johnson v. Lindon</u>
<u>City Corp.</u>, 405 F.3d 1065, 1070 (10th Cir. 2005)(Judicial
estoppel protects the integrity of the judicial process by
prohibiting parties from deliberately changing positions
according to the exigencies of the moment.)(Citations omitted.)
(continued...)

Case 04-17704-nlj7   Doc 949   Filed 11/06/12   Entered 11/06/12 14:06:10 Page 34 of 50

4)   On July 1, 2009 the Trustee also filed a "Notice of Abandonment" (doc 844) that stated: "COMES NOW Philip J. Montoya, the Chapter 7 Trustee herein, and gives notice that he abandons all remaining property of the estate."

5)   On July 31, 2009, Mr. Montoya filed a Chapter 7 Trustee's Interim Report (doc 848) that stated there were no assets on hand, the value of assets remaining to be administered was zero, and listed no activities that would prevent case closing.

6)   No objections have ever been filed to the Report of No Distribution or the Trustee's Notice of Abandonment.

7)   The Court properly closed the case pursuant to Rule 5009 when no objections were filed.

8)   Closing of the case abandoned all scheduled assets.

9)   The automatic stay terminated as to all assets that left the estate upon closing.

10)   Mr. Cook has not met his burden of proof to overcome the presumption that the case was fully administered.

11)   The Court cannot find that there are significant assets to justify setting aside the Final Decree.

**OTHER MATTERS**

---

[22](...continued)
The Court will not base its decision on judicial estoppel, however.  These facts are cited only to establish that the values ascribed by the Debtor are to be taken with a grain of salt.

Page  -35-

**1.** Because Mr. Cook is self-represented the Court should construe his pleadings liberally to afford justice.[23]  His Motion could be construed as a Motion to Reopen the case (for which no filing fee was paid).  Examined in that light, the Court also denies the motion 1) for lack of ripeness, and 2) for lack of standing (in part).

> In order for a claim to be justiciable under Article III, it must be shown to be a ripe controversy. "[R]ipeness is peculiarly a question of timing," Regional Rail Reorganization Act Cases, 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320 (1975), intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements," Abbott Labs. v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).  In short, the doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in " 'clean-cut and concrete form.' " Renne [v. Geary], 501 U.S. [312] at 322, 111 S.Ct. [2331] at 2339 [(1991](quoting Rescue Army v. Municipal Court of Los Angeles, 331 U.S. 549, 584, 67 S.Ct. 1409, 1427, 91 L.Ed. 1666 (1947)).
>
> ... In determining whether an issue is fit for judicial review, the central focus is on "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  13A Wright, Miller & Cooper, Federal Practice & Procedure, § 3532 at 112.

---

[23]   A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.
Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)(Citations and footnote omitted.)

Page  -36-

New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995).  See also Evers v. Astrue, 536 F.3d 651, 662 (7th Cir. 2008):

> [S]ome of the remaining claims fail because they are not ripe.  See Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003); see also Ind. Right to Life, Inc. v. Shepard, 507 F.3d 545, 549 (7th Cir. 2007). For example, Dr. Evers requested that his prospective employers be given good references "*in the event* Dr. Evers secures employment with another branch of [SSA], another governmental agency, or in the private sector ...." (emphasis added).  Evers has not indicated that he has or will pursue such employment, and SSA has not stated that it will fail to provide adequate references—this claim rests upon "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  Texas v. United States, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)).  Evers also requested that his "name be removed from the List of Parties Excluded from Federal Procurement and Nonprocurement Programs *in the event* that [SSA] has already complied with [federal regulations]." (emphasis added).  Again, this claim raises an unripe claim because SSA explained that it has not placed Evers on any such list.  See id. at 300, 118 S.Ct. 1257.

Ripeness is a jurisdictional prerequisite for federal jurisdiction, and the Court must examine it sua sponte.  Friends of Marolt Park v. United States Department of Transportation, 382 F.3d 1088, 1093 (10th Cir. 2004).

Cook's Motion distills down to two requests: 1) maintain a forum for him to continue his pursuits against Wells Fargo Bank, the Garretts, and the former trustees, and 2) to maintain a forum in which he can avoid liens against exempt property.

Page –37–

As to the attempt to maintain a forum to pursue claims, this relief would be available if and only if the Tenth Circuit Court of Appeals reverses this Court's standing determination, which may never occur at all. Therefore, it is not ripe. The Court also cannot grant any relief now because Mr. Cook lacks standing[24].

_____

[24]This Court has already ruled several times that Mr. Cook and his corporations lack standing to pursue stay violations. The Court now finds that Mr. Cook, as a discharged debtor in a Chapter 7 case, lacks standing to file a motion to reopen the bankruptcy case in order to pursue assets for creditors. He has no financial interest in the estate and cannot receive any benefit. <u>Mullendore</u>, 741 F.2d at 308 ("Application to have the estate reopened may be made by an 'interested party' who would be benefited [sic] by the reopening.")(Citation omitted); <u>Pardo v. Countrywide Home Loans, Inc. (In re Pardo)</u>, 401 B.R. 509, 511 (Bankr. S.D. Fla. 2009):

> Pardo is seeking reentry into Chapter 7 for purposes of pursuing litigation arising out of his former Chapter 13 case. Further muddying matters, any claims arising out of Pardo's failed Chapter 13 would be litigation assets of his estate. In such a case, "The trustee has sole authority to dispose of property, including managing litigation related to the estate." <u>Cable v. Ivy Tech State College</u>, 200 F.3d 467, 472 (7th Cir. 1999). The Trustee is not a plaintiff.
>    Thus, in short, Pardo would like to reenter Chapter 7—something for which he is ineligible—so that he may pursue a claim under Chapter 13—something for which he has no standing.

<u>See also</u> <u>In re Ayoub</u>, 72 B.R. 808, 811-12 (Bankr. M.D. Fla. 1987):

> The right to reopen a closed estate is specifically recognized by the Bankruptcy Code. ...
>    Obviously, the initial inquiry must be addressed to the question of standing, that is, standing to file a motion to reopen, and standing to object to the motion. Considering the first question it is quite evident that if the purpose of reopening the estate is to administer assets, only creditors have a standing to
                                                            (continued...)

As to the avoidance of possible liens, the Motion must be denied because it is not ripe. Cook mentions only "possible" liens. Therefore, there is no current case or controversy and the Court lacks jurisdiction. The Court cannot grant the relief of avoiding "possible" liens.

**2.**     In adversary proceeding No. 11-1144 Wells Fargo Bank, NA sought an injunction against Mr. Cook to prevent his abuses of serial filings of complaints against Wells Fargo in state court, Bankruptcy Court, and the United States District Court. After the initial pretrial conference, the Court entered an Order Dismissing Adversary Proceeding which stated, in part:

> The Court finds that it should dismiss the adversary without prejudice based on Mr. Cook's representation that he currently has no intention of filing anything more against Wells Fargo Bank, NA based on facts existing as of the date of the hearing, except anything that might result from a reversal of order(s) pending appeal in the Bankruptcy Appellate Panel.

(Adv. No. 11-1144-S, Order, doc 12, October 31, 2011). The Bankruptcy Appellate Panel, in fact, affirmed.

---

[24](...continued)
seek an additional administration and clearly not the debtor. If the purpose of reopening is to accord relief to the Debtor, it is obvious that nobody but the Debtor has standing to seek to reopen the closed case. Accord In re Quine, 38 F.Supp. 869, 870 (E.D. La. 1941)("[A] petition to reopen a bankrupt's estate on the ground that it was closed before it was fully administered can only be filed by one who has an interest and will be benefited [sic] thereby.")(Citation omitted; decided under former law).

The Court has taken judicial notice of the filings in Cook's

Civil Rights Case, No. 10-CV-1173-JAP-KBM (D. N.M.). On August

24, 2011 the Hon. Theodore C. Baca filed a Motion to Enjoin

Further Pleadings by Daniel W. Cook (doc 100). That motion

recites, in part:

> It is time for Mr. Cook's abuse of the judicial
> system to be checked. In his latest volley, Mr. Cook
> has filed a motion for reconsideration, despite the
> fact that no such animal exists in the Federal Rules of
> Civil Procedure. Mr. Cook is aware of this fact. The
> time for engaging Mr. Cook is long since past. Judge
> Baca is not responding to Mr. Cook's Motion, as Mr.
> Cook does not explicitly ask the Court to revisit the
> dismissal of Judge Baca from the case. But Mr. Cook
> persists in reasserting his disturbing, unfounded,
> conclusory, inflammatory allegations that Judge Baca
> has violated Mr. Cook's civil rights. Additionally, Mr.
> Cook has filed a subsequent adversary bankruptcy
> proceeding, naming Judge Baca's successor in the state
> case, the Honorable Alan Malott, as a defendant.
> To stop Cook's repetitive, vexatious pleading, and
> in the interest of justice for others—particularly
> litigants in other cases who must wait while this Court
> and other courts deal with Mr. Cook's frivolous
> pleadings, Judge Baca hereby requests that the Court
> enjoin Mr. Cook from further pleadings related to the
> state case or the matters underlying the state case
> without first obtaining either the signature of a
> member of the New Mexico federal bar or leave of Court.

(Case 10-cv-1173-JAP-KBM, doc 100) (footnote omitted). After a

round of briefing, Senior United States District Judge James A.

Parker issued an Order to Show Cause that found: "Plaintiff

Daniel W. Cook (Plaintiff or Mr. Cook) has engaged in a pattern

of vexatious and abusive litigation activity in this and other

cases filed in this Court." (Id., doc 124, January 13, 2012).

The Order summarizes the long, twisted litigation history of Mr.

Cook with the various parties that has proceeded in the New Mexico State District Court, the New Mexico Court of Appeals, the New Mexico Supreme Court, the Bankruptcy Court, the District Court, and the Tenth Circuit Court of Appeals and has included, among other items, requests to enjoin the state court from ruling, removals, remands, sanctions, an application for a writ of mandamus, motions to reconsider virtually every order entered by every judge, a motion in the Tenth Circuit for a rehearing en banc[25], suits against judges and the adverse parties' attorneys, and claims of conspiracy, RICO violations and civil rights deprivations.  Judge Parker refers to United States District Court Chief Judge Black's opinion in Case No. 10-CV-71:

> Chief Judge Black described Plaintiff's vexatious and abusive litigation strategy in the state court case:
>> This litigation has a long and tortured history. Initiated almost seven years ago, this matter has seen the addition and subtraction of claims, parties, suits, and complaints.  It has included bankruptcy proceedings and federal-court abstention, has been the subject of an appeal to the New Mexico Court of Appeals, has spawned a request for extraordinary writs to the New Mexico Supreme Court, and, in its relatively brief stay in this Court, has included eight motions.  And yet even this laundry list of procedural gambits gives the impression that the suit has progressed, though in a herky-jerky fashion, along a complex but coherent path.  It has not.  This matter's unorthodox posture is almost wholly attributable

---

[25]See Appeal 10-2207, Garrett v. Cook, Cook's Petition for Rehearing En Banc (December 3, 2010).  The Petition and attached documents total 332 pages.  The Supplemental appendix contained an additional 143 pages.

Page  -41-

> to the efforts of pro se litigant Daniel Cook.
> Mr. Cook's filings have moved the suit hither and
> yon–from court to court, judge to judge–forcing
> the parties and the courts to untangle novel,
> largely unsupported arguments and procedural
> machinations.

Case No. 10 CV 71, *Memorandum Opinion* (Doc. No. 42) at 2.

> Chief Judge Black aptly noted that Plaintiff's
> removal of the state court case exposed "an unfortunate
> reality." <u>Id.</u> at 6.

> When a litigant–even, or perhaps especially, a pro
> se litigant–'engage[s] in a pattern of litigation
> activity that is abusive and vexatious,' he exacts
> significant time and resources from opposing
> parties, who feel compelled to respond to each
> baseless allegation in protecting their rights.
> In many cases, defendants find it less expensive
> to settle such cases than to respond to a
> determined litigant's sustained abuse. Courts
> bear a responsibility in protecting against such
> vexatious tactics. To that end, they may, inter
> alia, enjoin additional filing, impose sanctions,
> or require the payment of opposing parties'
> expenses. Were Mr. Cook to remain in federal
> court and continue his current antics, he would
> likely see all three.

(<u>Id.</u> 6-7.) This Court not only agrees with Chief Judge Black, the Court also finds that Plaintiff continues to employ the same litigation "strategy" in this case. Plaintiff has filed voluminous pleadings complaining of actions in the state court case by repackaging or reasserting claims related to issues decided in other courts. Under this strategy, Plaintiff continuously asserts claims over which this Court lacks jurisdiction or that have no legal basis upon which the Court can grant relief. Thus, the Court finds that an injunction against such tactics is warranted.

Judge Parker then proposed the following filing restrictions:

The proposed filing restrictions are as follows:

1. Mr. Cook, individually, as representative of Yolanda Cook, deceased, as representative of any corporate entity (including Hydroscope Group, Inc. Hydroscope Inc., USA, or Hydroscope Canada, Inc.), or as successor in interest to Philip J. Montoya, Plaintiff's Chapter 7

bankruptcy trustee, will be enjoined from filing any
pleadings, motions, or other documents in this Court
without the signature of an attorney licensed to
practice before this Court.

2. Mr. Cook will be enjoined from filing any pleadings,
motions, or other documents pro se in this Court
without leave of Court.

3. In seeking leave of Court to file documents pro se,
Mr. Cook will be required to submit to the Clerk of
Court an affidavit entitled "Application Seeking Leave
To File" with an attached copy of the order entered by
this Court imposing the filing restrictions. The
affidavit must contain the following:
    A. a brief description of the legal basis for the
    relief sought and a certification that the claims
    or contentions have not been raised or disposed of
    on the merits by any court.
    B. a certification that to the best of Mr. Cook's
    knowledge, the legal arguments advanced are not
    frivolous or made in bad faith, are warranted by
    existing law or a good faith argument for the
    extension, modification or reversal of existing
    law, are not imposed for any improper purpose,
    such as delay, or needless increase in the cost of
    litigation;
    C. a certification that Mr. Cook will comply with
    all rules of procedure and local rules of the
    Court; and
    D. a certification that the proposed pleading,
    motion or other document has not been ghost-
    written by a lawyer.

Judge Parker fixed a deadline of January 25, 2012 to respond.

Mr. Cook timely filed a Response to the Order to Show Cause

(Id., doc 127). Despite the overwhelming evidence of his abuse,

he defiantly denied all of the allegations and again recited as

facts a summary of each pleading on which he has been ruled

against and flatly claimed that each was well grounded in law.

He also faulted the Court for not identifying, with specificity,

Page -43-

each pleading he had filed over the seven year course of litigation that would be evidence of his abuse and argued that his civil rights were again being violated.  However, on page 12 of his response, Cook stated:

> Cook affirmatively states to this Court there is absolutely no likelihood he would file any other actions in any federal district court against the parties named in his one and only complaint filed by Cook in the federal courts, not unless the Tenth Circuit found the dismissal of his complaint by this Court was err. [sic].  There is absolutely no need for any imposed filing restriction upon Cook by this Court whether or not there could be a finding that one or more filings by Cook was abusive and or filed for some other unacceptable purpose.

(Id., doc 127, p.12).  Judge Parker entered an Order on February 6, 2012 (doc 128) quoting the cited passage and finding that it would not be necessary to impose, at that time, the proposed filing restrictions.  The Court ordered "[T]he proposed filing restrictions set forth in the ORDER TO SHOW CAUSE (Doc. No. 124) will not be imposed at this time based on the promise by Plaintiff Daniel W. Cook set forth in his Response (Doc. No. 127)."

This Court now finds that Cook's Motion to Alter or Amend Final Decree, or Alternatively Vacate [Final Decree], Reinstate Automatic Stay, and to Retain Jurisdiction for All Matters Related to the Bankruptcy to Afford Constitutional Rights Granted by Art 1, Section 8, Clause 4 of the U.S. Constitution was a direct attack on Wells Fargo Bank, the Garretts, and the former

Page -44-

Trustees, that justifies reopening adversary proceeding No. 11-1144. This Motion was a direct breach of the promise Mr. Cook made to the Court that caused the adversary to be dismissed. The Court finds that this Motion was a transparent attempt to preserve a venue in which Mr. Cook could continue to file groundless and vexatious pleadings. The Motion continues Mr. Cook's long-standing strategy of pleading hundreds of irrelevant facts, attaching grossly voluminous exhibits, and making spurious and outrageous, defamatory claims about the other parties that have already been ruled upon (against Mr. Cook). The Motion was devoid of any merit and, despite Mr. Cook's intimate familiarity with motions to reconsider, it failed to allege or satisfy any element required for a successful motion to alter or amend. The Court also finds that the Motion is a clear violation of Fed.R.Bankr.P. 9011.[26] In consequence, the Court would

---

[26]That Rule provides, in part:
**Rule 9011. Signing of Papers; Representations to the Court; Sanctions; Verification and Copies of Papers**

(a) Signing of papers
Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.
(b) Representations to the court

(continued...)

Case 04-17704-nlj7    Doc 949    Filed 11/06/12    Entered 11/06/12 14:06:10 Page 45 of 50

[26](...continued)
By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

    (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

    (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

    (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

    (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions
If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

    (1) How initiated
    ...
    (B) On court's initiative
    On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

    (2) Nature of sanction; limitations
    A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct
                            (continued...)

ordinarily, by separate Order to Show Cause, give Mr. Cook the opportunity to explain why sanctions should not be imposed for the Motion's misstatement of facts, misstatements of law, arguments made without any legal support or without indicating that they would be changing the existing law, for presenting arguments on which he had already been overruled without revealing that fact, and for its failure to investigate bald and inaccurate allegations[27].

---

[26](...continued)
by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.
    (A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).
    (B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.
(3) Order
When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.
...

[27]E.g., Mr. Cook's claims that Judge Starzynski was signing orders without any authority to do so because he had retired. This was obviously stated with no prior investigation into the facts. A simple phone call to the Court Clerk, the newly
(continued...)

The difficulty with reopening the adversary proceeding and proceeding with a sanctions inquiry is that such proceedings require significant time to adjudicate, and in this instance, more time than this judge has remaining in his recall appointment. See note 1 above. Thus, the completion of either or both the reopening of the adversary proceeding or Rule 9011 sanctions would necessitate another recall order from the Tenth Circuit Court of Appeals so that this judge could complete that process, or the transfer of these specific proceedings to another judge. This judge can say with some confidence that neither he nor the Tenth Circuit contemplated his recall duty extending beyond this calendar year. And as to the transfer to another judge, this specific problem would require so much of an education for the succeeding judge as to considerably increase the burden that Mr. Cook is already imposing on the judiciary, thereby causing the very harm that reopening the adversary proceeding and imposing Rule 9011 sanctions would be intended to prevent. For this reason, the Court declines at this time to

---

[27](...continued)
appointed Judge Thuma's Chambers, Chief Judge Jacobvitz's Chambers, or the Tenth Circuit Court of Appeals would have revealed the ridiculousness of this claim. Furthermore, a Google search performed later the day Mr. Cook filed his Errata that made these claims contained a link, on the first page, to a website that stated he was on recall status through the end of the year. Furthermore, it is ridiculous to assume that the Federal Judiciary does not have mechanisms in place to ensure that orders are signed by authentic judges.

Page -48-

take any further action, in effect giving Mr. Cook **one last chance to keep his word and honor his commitments**. Should Mr. Cook not keep his word and honor his commitments, the findings and conclusions in this memorandum opinion may serve as the basis for immediately taking the actions identified above, or other action, to prevent his continued manifest abuse of the system.

For the foregoing reasons, then, the Court will enter an order denying with prejudice Debtor Daniel W. Cook's Motion to Alter or Amend Final Decree, or Alternatively Vacate [Final Decree], Reinstate Automatic Stay, and to Retain Jurisdiction for All Matters Related to the Bankruptcy to Afford Constitutional Rights Granted by Art 1, Section 8, Clause 4 of the U.S. Constitution (doc 941) as amended and supplemented by doc 942.



　　　　Honorable James S. Starzynski
　　　　United States Bankruptcy Judge

Date entered on docket: November 6, 2012

Copies to:

Daniel William Cook
920 Galeras Street NW
Albuquerque, NM 87120

Michelle Ostrye
Attorney for Wells Fargo
PO Box 1945
Albuquerque, NM 87103-1945

Linda S. Bloom
Former Chapter 11 Trustee
PO Box 218
Albuquerque, NM 87103-0218

Philip J. Montoya
Former Chapter 7 Trustee
PO Box 159
Albuquerque, NM 87103

Leonard K Martinez-Metzgar
Attorney for UST
PO Box 608
Albuquerque, NM 87103-0608

Chris W Pierce
Hunt & Davis, P.C.
Attorney for Garretts
2632 Mesilla St. NE
Albuquerque, NM 87110

Catherine F Davis
Attorney for Garretts
2632 Mesilla Street NE
Albuquerque, NM 87110